E. B. HESS, Appellee, v. CEDAR RAPIDS STATE BANK et al., Appellants.

**EXECUTION:** Sales—Sale Under Reversed Judgment. The measure of damages for selling property on execution on a judgment *subsequently reversed on appeal* is the reasonable value of the property on the date of levy, with interest to date of recovery.

*Appeal from Linn District Court.*—F. F. DAWLEY, Judge.

MAY 13, 1921.

SUIT to recover value of property sold on execution, under judgment afterward reversed. *Hall v. Getty*, 183 Iowa 436. Verdict for plaintiff and judgment thereon. Defendants appeal.—*Affirmed*.

*Redmond & Stewart*, for appellants.

*Voris & Haas* and *Johnson, Donnelly & Swab*, for appellee.

ARTHUR, J.—Defendants held a chattel mortgage, purporting to cover a hardware stock belonging to plaintiffs, and

brought a suit in equity to establish the lien of the mortgage and to foreclose it. Plaintiff pleaded that defendants, by reason of certain facts, had waived the lien of the mortgage, and were estopped from asserting any rights thereunder. On the trial in the district court, the mortgage was established as a lien on the stock of hardware to the amount of $4,991.81, and foreclosure was decreed and the property ordered sold under special execution. Plaintiff appealed to this court, and, pending determination of the appeal, defendants caused execution to issue and a levy to be made, on August 1, 1917, and the stock of hardware to be sold at sheriff's sale on August 30, 1917. The appeal above referred to was determined in this court on May 17, 1918 (*Hall v. Getty,* 183 Iowa 436), this court holding that the stock of hardware was free from the lien of the mortgage and from any claim on the part of defendants. Plaintiff brought this suit to recover the value of the stock of hardware which had been sold on execution, which plaintiff alleged to be of the value of $6,000. Plaintiff claimed he was entitled to the return of the stock or its value. The stock having been sold, it could not be returned. The stock sold at the execution sale on August 30, 1917, for $3,000.

There was no dispute as to the facts constituting the history of the case. Plaintiff's claim was that he was entitled to recover the value of the hardware stock at the time of the levy of the execution. Defendants claimed that the measure of recovery was the $3,000 which the stock brought at execution sale, plus interest at 6 per cent, and offered to pay that amount, and denied further liability. There was a trial to a jury, resulting in a verdict for the plaintiff in the sum of $5,532. The jury found the value of the stock at the time of the levy to be $4,800. The interest on said sum brought the verdict up to $5,532. Judgment was entered on the verdict. Defendants' motion for a new trial was overruled, and they appeal.

On the trial, the court held that the only issue was the value of the hardware at the time of the levy, and the evidence was confined to that issue. A number of witnesses were called by each party as to the value of the stock. The usual divergence of opinion as to values was exhibited. Plaintiff's witnesses placed the value at from $5,500 to $6,000. Defendants' wit-

nesses placed the value of the stock at from $2,000 to $3,000. As before stated, the verdict fixed the value of the stock at the date of the levy at $4,800.

Appellants attempted to assign 19 errors upon which they rely for reversal. These assignments, directly or indirectly, challenge the theory upon which the case was controlled by the court in the introduction of testimony and instructions to the jury. It is doubtful whether any of the assignments of the alleged errors are stated with sufficient definiteness to warrant consideration. Some of them are not only too vaguely stated, but are not supported by brief points. The only exceptions to instructions are taken in the motion for a new trial, and therein only Instruction No. 5 is excepted to. We may remark, however, that appellants are not deprived of full consideration of the one and only question in the case because their assignments are not discussed *seriatim*. The assignment which is lodged at the court's Instruction No. 5, set forth in Paragraph 9 of the motion for a new trial, comprehends the whole case. In Assignment No. 15, which we will discuss on its merits, defendants complain that the court erred in giving, on its own motion, Instruction No. 5, submitting the sole question to the jury of what was the ''fair market value'' of the property in controversy at the time it was taken by the sheriff and sold under execution in August, 1917, because the proper measure of the plaintiff's recovery was the amount of money received on regular execution sale, plus interest at 6 per cent, and there was no other proper measure of recovery; and because the instruction submits to the jury the question of the fair market value of the hardware stock in August, 1917, without any evidence to sustain such finding. Defendants' contention is that the evidence did not tend to prove the market value, nor did defendants' evidence tend to show the market value.

On the trial, the court held that the only issue was the value of the hardware stock at the time of the levy, and the evidence was confined to that issue. The main question, and, in fact, the only question involved in the case, broadly speaking, is, Was the theory adopted by the court correct or not? Defendants complain that Instruction 5 erroneously stated the law, in submitting to the jury what was the ''fair market value'' of the

property, for two reasons: (1) Because the measure of plaintiff's recovery was the amount of money and proceeds received on regular execution sale; and (2) because it submits to the jury the question of the fair market value of the property in August, 1917, without competent evidence of the fair market value to sustain such finding. Appellants except only to Instruction 5. But in Instruction 3, the jury was told that, "after the judgment was reversed, the law requires the defendants to return the property or its value to the plaintiff;" and in Instruction 4, that "defendants are liable to the plaintiff for the fair market value of the property so sold at the date of the levy by the sheriff, August 1, 1917, with interest at 6 per cent from that date to the present time;" and in Instruction 6, that the burden rested on the plaintiff to show the fair market value of said property on August 1, 1917. These instructions, 3, 4, and 6, were the essential instructions in submitting the case, and, not being excepted to, became the law of the case. These instructions, 3, 4, and 6 are not subject to review; and, as the theory upon which recovery is permitted is set out in these instructions, really no ground of complaint is left to appellants of Instruction 5, which merely directed the jury that they could consider no other question than the value of the property at the time it was taken by the sheriff (*Gilling v. Held,* 181 Iowa 926); for this was but saying to the jury what had been stated in Instructions 3 and 4, with the condition that they should confine themselves to the single question of value. If Instructions 3, 4, and 6 stated the law of the case, which must be conceded, it is difficult to comprehend how Instruction 5 could be prejudicial in excluding other questions. But conceding that claimed error is sufficiently specified, and available to appellants, and that the brief points apply to such an extent as to warrant the consideration of Assignment 15, we will consider the questions there presented, above set forth.

In many jurisdictions, there are no statutes governing restitution, and in those states, the rule must be in accordance with the construction of the rule of the common law. In the absence of statute, upon the reversal of a case entitling a party to restoration of the property, where restoration is impossible because of sale on execution prior to the determination of an

appeal, courts have not agreed, and out of their divergence two general rules have arisen: one line of cases holding that the measure of recovery is the proceeds of the execution sale, and another line holding that the true measure is the value of the property at the time it was taken. Text writers state the two rules. Section 254, 2 Ruling Case Law (page 299), states the rules:

"In case property of the defendant is sold on execution or judicial sale, pending an appeal, and it is purchased by a third person whose title is not defeated by the reversal, the amount of recovery to which the appellant is entitled must be determined by adopting one of two theories, concerning which the courts have not been able to agree. On the one hand, it is insisted, and it would seem with the better reasoning, that he who enforces a judgment, the execution of which is not stayed, cannot be regarded as a wrongdoer, though the judgment is subsequently reversed, and hence, on such reversal, his position is merely that of one who has in his hands the moneys realized from such enforcement which he is no longer entitled to retain, and that he may exonerate himself from liability by paying the amount of the proceeds which he has so received, with interest thereon from the date of the sale. On the other hand, it has been held that the defendant may recover all the damages which he has suffered by the sale, which, of course, would be the value of the property sold, with, perhaps, interest from the date of sale."

4 Corpus Juris, Section 3248, page 1204, states the rule contended for by defendants:

"In a proper case therefor the order of restitution may include costs and rents and profits; but where there has been a sale under the judgment, the court will order restitution only for the amount actually received by the judgment creditor, and not for the value of the property sold."

A comprehensive discussion is found in 2 Sutherland on Damages (4 Ed.), Section 469, and in 3 Cyc. 470, Note 94.

In *Smith v. Zent,* 83 Ind. 86 (43 Am. Rep. 61), the Indiana court held that, in such a case, the measure of recovery is the value of the property sold, and not the proceeds of the sale, for the reason that the amount received at the sale may not com-

pensate the owner for the loss.    After discussing authorities, the court said:

"From the foregoing, it clearly appears that the owner of property sold under the circumstances stated is not limited in his recovery to the amount for which the property sold, but that he may recover, in the appropriate action, the value of the property at the time of the sale.   Nothing short of this will compensate him for his loss.   The rule of damages is compensation for the loss, and this entitles the party to the value of the property sold."

In our state, the question is governed by statute, and whatever the rule may be in other jurisdictions, the statute must and does control.   Evidently, our legislature, in the light of the conflict of decisions as to the true rule, adopted the rule laid down in *Smith v. Zent,* supra, and other cases holding to the same rule, that, upon reversal of a judgment, the person whose property has been sold on execution under such judgment is entitled to the return of the property; or, if it cannot be returned, then he is entitled to its value when taken.   We think this is a just rule; for his property has been taken from him, and, by reversal of the judgment, it has been adjudicated that he is wrongfully deprived thereof.   He was innocent of wrong, and, if the property cannot be returned, justice requires that he should have its value at the time it was taken.   Nothing short of this will compensate him for his loss.   The rule of damages is, compensation for his loss, and this entitles him to the value of the property sold.   Our statute, Code Section 4145, reads:

"If, by the decision of the Supreme Court, the appellant becomes entitled to a restoration of any part of the money or property that was taken from him by means of such judgment or order, either the Supreme Court or the court below may direct execution or writ of restitution to issue for the purpose of restoring to him such property *or its value.*"

No case is cited from our court, and we have found none, expressly deciding the question raised in this case.   *Zimmerman v. National Bank,* 56 Iowa 133, is closely in point.   In that case, we held that, where execution was issued on the judgment, levy made, and property sold, and afterwards the judgment was reversed, an action to recover the value of the property would lie,

and that no demand prior to suit was necessary. Discussing Section 3198 of the Code of 1873, with which Section 3540 of the Revision and our present Section 4145 are practically identical, we said:

"In *Hanschild v. Stafford*, 27 Iowa 301, it was held that this section was designed merely to afford a cumulative and summary remedy, and that a party may resort to the ordinary suit for redress. It is insisted by the appellee that the seizure was under due process of the court and rightful in its inception, and that no subsequent event can render that act wrongful. This may be admitted. But the moment that the judgment under which the defendant acted was reversed, it became the legal duty of the defendant to restore to the plaintiff all property, *or the value thereof*, taken under the judgment. The continuing to hold the property after the reversal of the judgment, was without legal authority, and wrongful, and rendered the defendant liable to an action. No demand of restitution was necessary to determine the lawfulness of the defendant's possession."

The language of the statute, *"or its value,"* is plain and clear, and leaves no room for debate as to its interpretation. It means the value of the property, and not the *"proceeds"* of the execution sale.

Defendants complain that, even if the fair market value of the property is the proper measure of recovery, the evidence offered by plaintiff was not competent to establish such value. We have carefully examined the evidence. Defendants' contention in that respect is without merit. The court permitted to both parties wide latitude in the evidence as to value. One, at least, of defendants' own witnesses testified to the fair market value of the property. Defendants can scarcely complain. The court permitted one of their witnesses to testify that the property brought $3,000 at execution sale.

The importance of the question involved has impelled us to examine the record beyond the scope warranted by the insufficient assignments of error. We discover no reversible error, and the judgment of the trial court is—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.