[Nos. 7272-0-III; 7362-9-III.   Division Three.   June 12, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. A.N.W. SEED CORPORATION, ET AL, *Appellants.*

*Terry P. Abeyta* and *Abeyta & Nelson, P.S.,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Donna L. Walker, Assistant,* for respondent.

GREEN, C.J.—The sole question presented is whether the court abused its discretion by denying defendants' motion to vacate a default judgment. We reverse.

The State commenced this action against the Kilthaus alleging violations of the Consumer Protection Act based on alleged misrepresentations with regard to the growing and marketing of Jerusalem and American artichokes. The alleged misrepresentations were made in oral and written advertising and other promotional materials. The State sought damages on behalf of the alleged injured farmers and a permanent injunction as to each misrepresentation. After service of the summons and complaint, Lyle Kilthau took the papers to the law firm of Brooks & Larson in

Yakima on January 3, 1985. Mr. Brooks told Mr. Kilthau he would be required to pay a retainer fee before his firm would undertake to represent them. Mr. Kilthau then requested the firm to file a notice of appearance for all the defendants "until [Mr. Kilthau] could make other arrangements". The firm agreed to do so. At this time, the State had not filed the action.

The next day, January 4, Mr. Kilthau left on a trip to Jamaica. On January 11, the State filed the action in Yakima County, and on January 15 the law firm filed a notice of appearance on behalf of the Kilthaus. On February 1 the law firm filed a notice of intent to withdraw as Kilthaus' counsel. A copy of this notice was mailed to Mr. Kilthau's last known address. Although Mr. Kilthau claims he left instructions with the post office to forward his mail, the letter containing the notice was returned to the law firm as undeliverable.

The law firm having withdrawn and no answer having been filed, the State on February 20 moved for default. On March 1 the motion was granted and a default judgment entered assessing civil penalties and attorney fees of $279,326 and ordering restitution to the alleged injured farmers in an undetermined amount. Mr. Kilthau learned of the default on March 18 when his sister telephoned him in Jamaica. Mr. Kilthau immediately arranged to return to Yakima arriving on March 20. He employed Mr. Abeyta, his present counsel, to represent him and arrangements were made to file a motion to vacate the default judgment. The motion was filed on March 26 and on April 5 was orally denied. The Kilthaus moved for reconsideration and following a hearing on May 24, the court on June 27 entered an order denying the motion to vacate and the motion to reconsider. On July 2, the Kilthaus appealed from this order. Subsequently, on August 28 the trial court entered an order granting consumer restitution, civil penalties and attorney fees under the Consumer Protection Act totaling over $725,000. An appeal was also taken from this order and these appeals were consolidated for disposition

by this court.

A motion to vacate is addressed to the sound discretion of the trial court and this court may not disturb that disposition unless it clearly appears abuse of discretion has occurred; abuse of discretion is less likely to be found if the default is set aside. *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). Default judgments are not favored in the law and are considered one of the most drastic actions a court may take to punish disobedience to its commands. *Griggs v. Averbeck Realty, Inc., supra* at 581. The policy is that controversies should be determined on their merits rather than by default. *Griggs,* at 581; *see also C. Rhyne & Assocs. v. Swanson,* 41 Wn. App. 323, 327–28, 704 P.2d 164 (1985). The fundamental guiding principle in the area of defaults is to do justice. *Griggs,* at 582.

> Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. *What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.*

(Italics ours.) *Griggs,* at 582 (quoting *Widicus v. Southwestern Elec. Coop., Inc.,* 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)). The proceeding to vacate a default judgment is equitable in character and relief is to be afforded in accordance with equitable principles. *Griggs,* at 581; *White v. Holm,* 73 Wn.2d 348, 351, 438 P.2d 581 (1968).

The factors to be considered in ruling upon a motion to vacate a default judgment are outlined in *White v. Holm, supra* at 352:

> (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default

judgment; and (4) that no substantial hardship will result to the opposing party.

The court then went on to state:

> The first two are the major elements to be demonstrated by the moving party, and they, coupled with the secondary factors vary in dispositive significance as the circumstances of the particular case dictate. *Thus, where the moving party is able to demonstrate a strong or virtually conclusive defense to the opponent's claim, scant time will be spent inquiring into the reasons which occasioned entry of the default,* provided the moving party is timely with his application and the failure to properly appear in the action in the first instance was not willful. On the other hand, where the moving party is unable to show a strong or conclusive defense, but is able to properly demonstrate a defense that would, prima facie at least, carry a decisive issue to the finder of the facts in a trial on the merits, the reasons for his failure to timely appear in the action before the default will be scrutinized with greater care, as will the seasonability of his application and the element of potential hardship on the opposing party.

(Italics ours.) *White v. Holm, supra* at 352–53. We review the trial court's denial of the motion to vacate the default judgment in light of these factors and principles.

Here, the trial court considered only one factor—excusable neglect—and declined to consider any of the other factors, *i.e.,* meritorious defense, diligence after notice of the default, and hardship on the opposing party. Limiting its consideration solely to the one factor was, in our view, error.

With respect to the first factor, there was "substantial evidence extant to support, at least prima facie, a defense to the claim" asserted by the State. In the purchase and marketing agreements, the farmers acknowledge the Kilthaus had not made any present or future guaranties relative to yield or market for artichokes as a food, feed, or fuel feedstock. Mr. Kilthau in his affidavit stated the representations contained in the promotional materials were reasonably accurate. His affidavit also stated:

In fact, Brooks & Larson, P.S., has in its files affidavits from many of the people who signed the Purchase Agreements and Exclusive Marketing Agreements to the effect they never even read any of the promotional material attached as Exhibits 1 and 2 to the Complaint prior to signing up to grow artichokes. There are affidavits from others to the effect that they may have seen the promotional materials but didn't rely upon them in their decision to sign a purchase and marketing agreement.

This evidence was before the court at the time the motion to vacate was denied. At the time the court considered the Kilthaus' motion to reconsider, the farmers' affidavits mentioned as being in the files of Brooks & Larson, P.S., had been filed. In essence, those affidavits stated they did not rely upon the promotional materials; some never received promotional materials at all; they knew there were risks associated with growing and marketing artichokes and willingly accepted those risks without regard to the promotional literature; and they did not believe there was a valid basis for the State's investigation and that it should be concluded and dismissed. These affidavits, particularly the farmers', demonstrate the presence of a strong prima facie defense. In fact, these affidavits are not controverted in the record, although during oral argument the State indicated the circumstances under which they were signed might affect the weight to be given them. That would be a matter for resolution at trial.

In light of this demonstrated prima facie defense, as stated in *White v. Holm, supra* at 352, "scant time will be spent inquiring into the reasons which occasioned entry of the default" as it relates to the second factor—excusable neglect. At the time Mr. Kilthau left for Jamaica, the action had not been filed. At that point he had an agreement with the law firm to enter a notice of appearance on his behalf. While he did not notify the law firm he was leaving for Jamaica and in hindsight should have done so, he nevertheless stated he thought that he had the matter in good hands for the time he would be gone. He asserted in his affidavit that he left a forwarding address with the post

office, but a postal official by affidavit stated there is no record of it. Whether he did or did not leave a forwarding address is a question of fact. It is clear Mr. Kilthau was unaware that the law firm had withdrawn from the case. Notwithstanding, upon learning of the default from his sister who read a report of it in the newspaper, he immediately responded by returning to Yakima and hiring Mr. Abeyta, who promptly filed a motion to vacate the default judgment.

Considering (1) all of the events took place in a period of slightly more than 2 months from the time the action was commenced; (2) the Kilthaus responded immediately after the default; (3) the presence of what appears to be a strong prima facie defense; (4) the complexity of the case; (5) the nature and amount of the judgment entered on default; and (6) the lack of substantial hardship to the State, we find that the ends of justice are best served by vacating the default judgment so the case may be tried on the merits. Consequently, we find that the trial court abused its discretion when it limited its consideration to excusable neglect and declined to set aside the default judgment.

Reversed.

MUNSON and MCINTURFF, JJ., concur.