[No. 9535-5-III.  Division Three.  January 30, 1990.]

THE STATE OF WASHINGTON, *Appellant,* v. A.N.W. SEED CORPORATION, ET AL, *Respondents.*

764

*Kenneth O. Eikenberry, Attorney General,* and *Michael Grant, Assistant,* for appellant.

*Jeff Campiche* and *Kargianis & Austin,* for respondents.

GREEN, J.—The primary question is whether the court erred in granting a judgment for more than the proceeds realized by the State at the two sheriff's sales conducted while the default judgment was on appeal.

In 1982 Lyle Kilthau, a Yakima Valley farmer, established A.N.W. Seed Corporation for the purpose of selling Jerusalem artichoke seed tubers to farmers in central Washington. On January 11, 1985, the State of Washington commenced this action under the Consumer Protection Act alleging that A.N.W. Seed in its promotional advertising misrepresented several material facts relating to the growing and marketing of Jerusalem artichokes. On March 1 a default judgment was entered against A.N.W. Seed for $279,326.60 in penalties, attorney fees and costs. A.N.W. Seed moved to vacate the default judgment; this was denied and A.N.W. Seed appealed. Subsequently, on August 28 a second order was entered granting consumer restitution, civil penalties and attorney fees in excess of $725,000. A.N.W. Seed appealed from this order.

Since A.N.W. Seed did not file a supersedeas bond under RAP 8.1(b) pending appeal, the State on October 17, 1985, executed upon the judgment and sold A.N.W. Seed's property at two public auctions held December 11, 1985, and January 15, 1986, for the total sum of $16,588.50. The

property sold included farm equipment, machinery, trucks, tools, crops growing or harvested, as well as personal property. Six months after these sales, on June 12, 1986, this court in *State v. A.N.W. Seed Corp.*, 44 Wn. App. 604, 722 P.2d 815 (1986), vacated the default judgment and remanded the case for trial on the merits.

On April 10, 1987, A.N.W. Seed moved to require the State to restore the property seized or, in the alternative, its reasonable market value, together with interest and the lost income resulting from the seizure. A.N.W. Seed alleged the fair market value of the property was $250,000. A.N.W. Seed also moved to amend its answer and add several counterclaims. On May 21 the court in a memorandum opinion denied the motion to amend. However, the court concluded that the term "value" as used in RAP 12.8 meant "market value", and ordered a hearing to determine the market value of items seized and sold by the State.

On June 1 the State's underlying action alleging violation of the Consumer Protection Act was tried to the court. The court held the overall sales and promotional program carried out by A.N.W. Seed Corporation and Lyle and Tim Kilthau had a tendency to mislead or deceive, and therefore their conduct constituted an unfair or deceptive practice under the Consumer Protection Act. RCW 19.86. Although the State prevailed, the court did not find actual deception. By the terms of its order, the court issued no injunction, assigned no civil penalties, awarded no restitution and no attorney fees or costs.[1] Subsequently, on September 10,

---

[1]In doing so, the court stated:

"But what sticks in the Court's mind—And it's not so much from the testimony and evidence of the case, it's from the background of the case that I have followed considerably over the last several months, arguments, motions and such. And I can say this without any embarrassment because present counsel had nothing to do with that situation. And I'm speaking of the investigative aspect of this case and the manner in which it was handled by the Attorney General's Office: It was extremely heavy-handed to say the least, almost to the point where it was embarrassing for me to have to do what reading I did in connection with those motions and listening to counsel, reviewing some of the investigative depositions. It was simply not done in a professional manner."

after hearing evidence of the fair market value of the property sold, the court fixed the value of the seized property at $57,631.50 and directed the sums recovered at the sheriff's sales and held in the registry of the court be paid to A.N.W. Seed and credited against the judgment. The State appeals and A.N.W. Seed cross–appeals.

## THE STATE'S APPEAL

The State contends the court erred in construing the term "value" in RAP 12.8 to mean "market value". The State's position is that when property has been sold, the value recoverable under RAP 12.8 is the amount realized upon the sale if the sale was conducted properly and in good faith citing Restatement of Restitution § 74, comment d, illustration 12 (1937). Here, the State contends it acted lawfully in reliance upon a nonsuperseded judgment and therefore its liability is limited to the net proceeds of the sale, $16,588.50. We do not agree.

RAP 12.8 should be construed as if it had been drafted by the Legislature. The words are to be given their ordinary meaning, and the language is to be read as a whole, seeking to give effect to all of the provisions in the rule. *State ex rel. Schillberg v. Everett Dist. Justice Court*, 90 Wn.2d 794, 797, 585 P.2d 1177 (1978).

RAP 12.8 provides:

> If a party has voluntarily or involuntarily partially or wholly satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate *to restore to the party any property taken from that party, or the value of the property.* An interest in property acquired by a purchaser in good faith, under a decision subsequently reversed or modified, shall not be affected by the reversal or modification of that decision. '

(Italics ours.) If the specific property cannot be restored, this rule does not restrict restoration to the proceeds of

---

At another point in the record, the court made a similar observation:

"I did not grant the State attorneys fees and costs—and, again, I think I made it quite clear, I did that more in the sense of—I don't want to say penalty, but terms, if you will, for what I considered to be a heavy–handed way that they performed early on in this situation."

sale. Instead, it more broadly directs that "the value of the property" be restored. As stated in 3 L. Orland & K. Tegland, Wash. Prac. § 3861 (Supp. 1989): "The essence of RAP 12.8 is that . . . [i]f the judgment is reversed, the trial court must enter orders appropriate to restore the appellant to his or her position prior to trial." An award of the proceeds of sale would not restore A.N.W. Seed to that position. *See Malo v. Anderson,* 76 Wn.2d 1, 454 P.2d 828 (1969); *In re Marriage of Mason,* 48 Wn. App. 688, 740 P.2d 356, *review denied,* 109 Wn.2d 1012 (1987).

Although no Washington decisions interpreting the term "value" for the purposes of RAP 12.8 have been cited, decisions from other states on analogous facts support the concept of making A.N.W. Seed whole, *i.e.,* restoring to A.N.W. Seed the fair market value of the property at the time it was sold by the State. *See In re 1969 Chevrolet 2-Door,* 134 Ariz. 357, 656 P.2d 646 (Ct. App. 1982) (following the reversal of a forfeiture judgment, the court held the owner was entitled to the fair market value of an automobile at the time of taking); *Wade v. Rathbun,* 23 Cal. App. 2d 758, 760, 67 P.2d 765, 766 (1937) ("the word 'value', when not qualified by the context or circumstances, has often been defined as meaning 'market value', . . ."); *Barron v. Phelps,* 238 S.W.2d 1016, 1019 (Ky. 1951) ("Should the judgment be reversed after execution has been done on it, the successful party on appeal must look to the execution creditor to make him whole."); *DeMayo v. Lyons,* 360 Mo. 512, 228 S.W.2d 691 (1950); *Lytle v. Payette-Oregon Slope Irrig. Dist.,* 175 Or. 276, 286, 152 P.2d 934, 938, 156 A.L.R. 894 (1944) ("the judgment creditor . . . ought to restore to the appellant whatever of value he caused to be taken . . ."); 33 C.J.S. *Executions* § 301, at 595 n.1 (1942) ("The measure of damages is the fair market value of the property when taken, and the owner is not confined to the amount of the proceeds of the execution sale", citing *Hess v. Cedar Rapids State Bank,* 191 Iowa 685, 182 N.W. 813 (1921)). While the State relies upon Restatement of Restitution § 74, comment *d,* illustration 12, we do not find it

applicable. RAP 12.8 specifically provides for the restoration of the value of the property and is the controlling authority. Thus, we conclude the court properly held that "value" contained in RAP 12.8 means "fair market value" at the time of the execution sale.

It is also contended that because A.N.W. Seed did not file a supersedeas bond, RAP 8.1(b), restoration should be limited to the proceeds received by the State from the sale. While a party may supersede the enforcement of a money judgment under RAP 8.1(b), a judgment creditor's ability to seize and sell property in satisfaction of a judgment is not free of the risk that the judgment may be reversed on appeal. Even though a bond is not filed, if the judgment creditor elects to sell the judgment debtor's property prior to completion of the appeal process, the judgment creditor must bear the risk of the consequences of a reversal and may be required to restore the property or its fair market value. RAP 12.8. Thus, the court here did not err when it required the State to restore to A.N.W. Seed the fair market value of the property it seized and sold. *See Northern Pac. Ry. v. United States,* 355 F.2d 601 (Ct. Cl. 1966); *Newton Realty Co. v. Fileccia,* 20 Mich. App. 674, 174 N.W.2d 603 (1969).

A.N.W. SEED AND KILTHAUS' CROSS APPEAL

■ A.N.W. Seed first contends the court erred when it refused to admit evidence of the profits it lost or the economic utility of the seized properties. In its April 10, 1987, motion for restoration, A.N.W. Seed sought a return of the reasonable market value of the seized property, together with interest and reimbursement "for lost income resulting from the invalid seizure, in an amount to be proved . . .". The court in its May 21 memorandum opinion denying the recovery for lost income stated it did "not intend to grant any rights to consequential damages to defendant which are not provided for by RAP 12.8." Since RAP 12.8 does not provide for restoration of lost profits, the court correctly refused to admit or consider such evidence. RAP 12.8 limits

recovery to the restoration of the property or its fair market value. Recovery of lost profits is not included or contemplated by the rule. Although we are sympathetic with A.N.W. Seed's position, we are limited by the provisions of RAP 12.8. None of the cases cited by A.N.W. Seed in support of its argument involve restoration under RAP 12.8 and therefore they are not applicable. *See Butler v. Anderson,* 71 Wn.2d 60, 66, 426 P.2d 467 (1967), *overruled on other grounds in Chaplin v. Sanders,* 100 Wn.2d 853, 676 P.2d 431 (1984); *Desimone v. Mutual Materials Co.,* 20 Wn.2d 434, 438, 147 P.2d 945 (1944). There was no error.

Second, A.N.W. Seed assigns error to several of the court's findings of fact involving the determination of value. A.N.W. Seed asserts the court erred in requiring "certainty of value" rather than a "reasonable basis" for value in estimating A.N.W. Seed's losses. To illustrate its contention, A.N.W. Seed refers to the July 27, 1987, hearing to determine the market value of the property sold at the sheriff's sales. There, the court heard testimony of two appraisers, Marion Pierce for the State, and Jim Castle for A.N.W. Seed. A.N.W. Seed contends the court erroneously valued: (1) an Acme spud planter, Model 400, and (2) a K&K harvester (Braco).

With respect to the spud planter, Mr. Castle valued it at $30,000 while Mr. Pierce fixed a value of $700. The court concluded the planter had a fair market value of $12,000. With respect to the K&K harvester, Mr. Castle assigned a value of $34,000 while Mr. Pierce assigned no value. The court found the fair market value of the harvester was $15,000. In reaching these values, the court in its memorandum opinion stated:

> The values placed on the property by the two appraisers varied greatly, and the Court concludes that in most instances the actual value of the property lies somewhere in between the two appraisals, neither of which covered all the property sold at Sheriff's Sale nor was all of the property appraised. In evaluating the property, the Court considers a number of factors including the equipment involved and its adaptation to other farming uses, the fact that neither the auction value nor the

value at which the dealer may attempt to sell the equipment establishes market value, general economic conditions relating to agricultural and farm machinery, the poor pre-sale advertising of the Sheriff's Sale, testimony that the market for potato equipment is very poor, Mr. Pierce's testimony that he believed certain equipment would bring $18,000 to $20,000 whereas the actual return was $9,480, and the value placed on certain equipment by defendant in his sworn statement of November 25, 1985. Other factors of lesser importance were also considered.

■ It is A.N.W. Seed's position that the testimony of Mr. Castle on both items provided more than a reasonable basis for determining the value of the equipment sold and that the court erred in requiring certainty of value. As a result, A.N.W. Seed argues the court's determination of $57,631.50 as the total value of the property was far less than the property's $110,000 appraised value. Since the court's findings are within the range of the testimony, they will not be disturbed.

Third, A.N.W. Seed contends the court erred when it found and concluded the sales and promotional program did have a tendency to mislead or deceive. Specifically, the court found that "the overall sales and promotional program carried out by Defendants A.N.W. Seed Corporation, Lyle Kilthau and Tim Kilthau, did have a tendency to mislead or deceive." The court determined, however, that A.N.W. Seed did not intend to mislead or deceive, nor were the farmers deceived.

We are mindful of the well established principles that intent to deceive is not necessary to show a violation of the Consumer Protection Act, *McRae v. Bolstad,* 101 Wn.2d 161, 167, 676 P.2d 496 (1984); *Fisher v. World–Wide Trophy Outfitters,* 15 Wn. App. 742, 748, 551 P.2d 1398 (1976), nor is it necessary to prove that any party was actually deceived. *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39, 51, 554 P.2d 349, 83 A.L.R.3d 680 (1976). However, on the facts presented to us, we conclude the court erred.

■ Since A.N.W. Seed was effectively put out of business by the commencement of this action, and "'events make it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur'", *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 312, 553 P.2d 423 (1976), *appeal dismissed,* 430 U.S. 952 (1977), there is no potential for future deception. Consequently, the only group that the promotional program could have misled or deceived were the farmers that were before the court and who the court found were not deceived. Under these facts, we find the court's order incongruent. No farmers were deceived. Therefore, how could the A.N.W. Seed promotional program have a tendency to deceive? *See Fisher v. World–Wide Trophy Outfitters, supra* (advertisements were found to have the capacity to deceive and were in fact deceptive); *Testo v. Russ Dunmire Oldsmobile, Inc., supra* (act of withholding facts material to sale of used automobile was deceptive).

In light of this conclusion, we find the court erred when it held the State to be the prevailing party and declined to consider A.N.W. Seed's request for attorney fees and costs. RCW 19.86.080 provides:

> The attorney general may bring an action in the name of the state against any person to restrain and prevent the doing of any act herein prohibited or declared to be unlawful; and the prevailing party may, in the discretion of the court, recover the costs of said action including a reasonable attorney's fee.

Since the award of attorney fees and costs for the trial rests in the discretion of the trial court, we remand for that determination.

As to the appeal, A.N.W. Seed is awarded its reasonable attorney fees and costs; however, we remand the determination of the amount to the trial court.

In view of our holding, we need not reach the other issues raised by A.N.W. Seed.

Affirmed in part; reversed in part and remanded.

MUNSON, C.J., and SHIELDS, J., concur.

Review granted at 114 Wn.2d 1019 (1990).