[No. 56956–8. En Banc. January 10, 1991.]

THE STATE OF WASHINGTON, *Petitioner,* v. A.N.W. SEED CORPORATION, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General, Owen F. Clarke, Jr., Senior Assistant,* and *Michael E. Grant, Assistant,* for petitioner.

*Kargianis, Austin & Erickson,* by *Russell A. Austin, Jr.,* and *Jeffery M. Campiche,* for respondents.

BRACHTENBACH, J.—Three issues are presented:

1. When a plaintiff executes on an unsuperseded judgment which is later reversed on appeal, what is the measure of restitution to be made by the judgment creditor—proceeds of the sheriff's sale or fair market value of the property sold?

2. Under the Consumer Protection Act, RCW 19.86, where the trial court found no intent to deceive and the

consumers who testified were not deceived, was it error for the court to find the defendant's conduct had a tendency to mislead or deceive?

3. In reviewing a trial court's determination of who is a prevailing party, what is the proper standard of review?

This litigation began with an action brought by the State against defendant, A.N.W. Seed Corporation, alleging violation of RCW 19.86, the Consumer Protection Act (CPA) based on defendants' alleged misrepresentations with regard to the growing and marketing of Jerusalem artichokes. Defendants appeared, but counsel withdrew and a default judgment was granted. Denial of defendants' motion to vacate was followed by an appeal. Defendants did not post a supersedeas bond.

Three months after notice of appeal, the State, the judgment creditor, obtained a writ of execution. The sheriff seized and ultimately sold farm machinery, vehicles, and other personal property of defendants. The sales proceeds were $16,588.50. The sales were conducted in accordance with the statute.

About 6 months later the Court of Appeals vacated the default judgment. *State v. A.N.W. Seed Corp.*, 44 Wn. App. 604, 722 P.2d 815 (1986) (*A.N.W. Seed* I).

Defendants moved, pursuant to RAP 12.8, for an order of restitution to restore the property sold at execution, or, in the alternative, to restore the reasonable market value of the property and to reimburse defendants for lost income resulting from the seizure and sales. (Clerk's Papers of Respondents, at 241–43). The trial court entered an order of restitution for the fair market value of the property. (Clerk's Papers of Appellant, at 8–9). After a hearing, the court set the value at $57,631.50.

After trial on the merits the court entered the following relevant finding of fact:

3. The court finds that there was no actual intent on the part of the Defendants, nor actual deception of the local farmers. The court finds, however, that the overall promotional and

sales program carried out by Defendants A.N.W. Seed Corporation, Lyle Kilthau and Tim Kilthau, did have a tendency to mislead or deceive.

Finding of fact 3. Clerk's Papers of Appellant, at 5.

That finding led to these conclusions of law:

2. An unfair or deceptive business practice does not require any showing of intent on the part of Defendants, nor any showing of consumer reliance, but simply a showing that Defendants' conduct had the capacity or tendency to mislead or deceive.

3. The court has found as a matter of fact that the overall sales and promotional program carried out by Defendants A.N.W. Seed Corporation, Lyle Kilthau and Tim Kilthau, did have a tendency to mislead or deceive. Therefore, those Defendants' conduct constitutes an unfair or deceptive practice under the Consumer Protection Act, RCW Chapter 19.86.

Conclusions of law 2, 3. Clerk's Papers of Appellant, at 5–6. The court held that the State was the prevailing party, but exercised its discretion under RCW 19.86.080 and denied an award of attorney fees.

The State appealed the trial court's holding that restitution was to be fair market value of the seized property rather than the proceeds of the sheriff's sales. Defendants cross–appealed the denial of lost profits, the court's determination of value of the seized property, and the finding that defendants' conduct violated the CPA.

The Court of Appeals affirmed the fair market value measure of restitution, reversed the finding of a CPA violation, reversed the determination that the State was the prevailing party, and remanded for a discretionary determination of whether defendants were entitled to attorney fees. *State v. A.N.W. Seed Corp.,* 56 Wn. App. 763, 785 P.2d 838 (1990) (*A.N.W. Seed* II). The State's petition for review raises the issues identified above. Defendants did not raise any additional issues in their answer. RAP 13.4(d). We reverse the Court of Appeals.

The first issue: When a plaintiff executes on an unsuperseded judgment which is later reversed on appeal, what is the measure of restitution to be made by the judgment

creditor—proceeds of the sheriff's sale or fair market value of the property sold?

We start with the proposition that a trial court judgment is presumed valid and, unless superseded, the judgment creditor has specific authority to execute on that judgment. RAP 7.2(c). RAP 8.1 provides for supersedeas in the trial court. Upon good cause shown, the court may fix an amount different from the amount of the judgment. RAP 8.1(b)(1). As noted in the comments to RAP 8.1, the relief afforded by RAP 8.1 is available as a matter of right. 86 Wn.2d 1176 (1976). These defendants did not supersede the judgment against them.

When the unsuperseded judgment is reversed, after execution thereon, the judgment debtors' recourse is provided by RAP 12.8. It provides in relevant part:

> If a party has . . . involuntarily partially . . . satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders . . . appropriate to restore to the party any property taken from that party, or the value of the property.

RAP 12.8. Because of the sales of the property it could not be restored; restoration of its value is the remedy.

Defendants argue that the word "value" in RAP 12.8 can only mean market value, citing cases for that general definition of "value." They convinced the trial court and the Court of Appeals, but we do not agree. After considering the historical perspective of restitution in these circumstances, the majority views as reflected in the Restatement of Restitution, and policy reasons, we conclude that the judgment debtor is entitled to the proceeds of execution, not the fair market value. Additionally, examination of the authorities cited by defendants and those relied upon by the Court of Appeals do not support the fair market value theory.

RAP 12.8, like its statutory predecessor, RCW 4.88.240 (repealed by Laws of 1957, ch. 7, § 10, p. 27), provides a form of restitution. RCW 4.88.240 authorized a writ of restitution "for the purpose of restoring to the appellant his

property, or the value thereof." Laws of 1893, ch. 61, § 27, p. 132. Restitution, the remedy sought by defendants, encompasses a very broad scope of remedies fashioned to fit a variety of circumstances. The restitution here sought is but a narrow application of the underlying principle that one person may be "accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss." Restatement of Restitution, at 1 (1937).

In construing a court rule, as in construing a statute, the court must examine the purpose, the historical background, and when it codifies a principle of common law, ascertain the generally accepted common law. Indeed, the common law, with stated exceptions not applicable here, is the rule of decision in Washington. RCW 4.04.010. If a statute is in derogation of a common law principle, it is to be construed strictly. If a statute substantially alters a common law principle, the intent to do so must be apparent from an express declaration, legislative history or the words themselves. *McNeal v. Allen,* 95 Wn.2d 265, 269, 621 P.2d 1285 (1980). Those principles apply to interpretation of a court rule. *State v. McIntyre,* 92 Wn.2d 620, 622, 600 P.2d 1009 (1979).

What is the common law principle of restitution applicable to these facts? We turn to the Restatement of Restitution. The object of the Restatement

> is to present an orderly statement of the general common law of the United States, including in that term not only the law developed solely by judicial decision, but also the law that has grown from the application by the courts of statutes . . ..

Restatement of Restitution, at ix (1937).

The Restatement of Restitution expresses the general common law applicable to the exact facts of this case. Section 74, entitled "Judgments Subsequently Reversed", provides:

> A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed

or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

Restatement of Restitution § 74 (1937). That section declares the general principle, but 15 comments with 32 illustrations follow, demonstrating that generalized statements extracted from opinions do not reflect the particularized standard which governs specific facts.

Comment *d* reads in part as follows:

If the debtor's property has been sold to a stranger and the proceeds paid to the judgment creditor, the judgment debtor is entitled to recover the amount thus received by the judgment creditor with interest; unless the judgment was void, he cannot recover the value of the property sold, if the action was brought in good faith and the sale was properly conducted, since the creditor was acting lawfully (see Illustration 12).

Restatement of Restitution § 74 comment *d* (1937). Illustration 12 is identical to the facts of this case:

12. A obtains a judgment against B for $3000. Execution is levied on the judgment and B's property, to the value of $4000, is sold. Although the sale is properly conducted, the property brings but $3000 which is paid to A. The judgment is reversed for error of law. B is entitled to restitution from A of only $3000 with interest.

Restatement of Restitution § 74 comment *d,* illustration 12 (1937).

There is supporting rationale elsewhere in the Restatement. In treating unjust enrichment, it is explained:

*e. Where benefit and loss do not coincide.* There are situations, however, in which a remedy is given under the rules applicable to this Subject, where the benefit received by the one is less than the amount of the loss which the other has suffered. In such a case, if the transferee was guilty of no fault, the amount of recovery is usually limited to the amount by which he has been benefited.

Restatement of Restitution § 1 comment *e* (1937). Likewise in summarizing the measure of recovery, it is said:

If the value of what was received and what was lost were always equal, there would be no substantial problem as to the amount of recovery, since actions of restitution are not punitive. In fact, however, the plaintiff [here judgment debtor] frequently has lost more than the defendant [here judgment

creditor] has gained, and sometimes the defendant has gained more than the plaintiff has lost.

In such cases *the measure of restitution is determined with reference to the tortiousness of the defendant's conduct or the negligence or other fault of one or both of the parties in creating the situation giving rise to the right to restitution. If the defendant was tortious in his acquisition of the benefit he is required to pay for what the other has lost although that is more than the recipient benefited. If he was consciously tortious in acquiring the benefit, he is also deprived of any profit derived from his subsequent dealing with it. If he [judgment creditor] was no more at fault than the claimant, he is not required to pay for losses in excess of benefit received by him* and he is permitted to retain gains which result from his dealing with the property.

(Italics ours.) Restatement of Restitution § 149, at 596 (1937).

Thus the Restatement explicitly establishes that the common law measure of restitution, under these facts, is the proceeds from the sheriff's execution sales, not the market value of the property sold, together with interest from the date of seizure. We so hold because the meaning and intent of the word "value" in RAP 12.8 reflects a word of art; our interpretation is logically consistent with the principles and rationale of common law restitution.

Text authority also supports our holding. "[T]he general and better opinion" is that "the judgment defendant is only entitled to so much as the plaintiff has realized upon the execution." 2 J. Sutherland, *Damages* § 469, at 1544 (4th ed. 1916); *accord,* 2 R.C.L. *Appeal and Error* § 254, at 299 (1914).

There are compelling principles of policy which warrant our holding. RAP 7.2(c) permits a judgment creditor to execute on a judgment. The court rule decrees also that "[a]ny person may take action premised on the validity of a trial court judgment or decision until enforcement of the judgment or decision is stayed as provided in rules 8.1 or 8.3." RAP 7.2(c). This authority to act upon a presumptively valid judgment would be essentially negated if the judgment creditor risked liability for the uncertain and perhaps then unascertainable market value of the property

executed upon. Even though the creditor and the sheriff acted in good faith and complied with statutory requirements there would be a very real exposure for a value far exceeding that realized upon a proper sale. In this case the judgment creditor, under the holding of the trial court and the Court of Appeals, became liable for 3½ times the amount realized at execution sales which are unchallenged as being procedurally proper. Indeed, defendants sought 6 to 8 times the amount realized, *plus* the value of real property alleged lost because of the farm machinery being sold, *plus* loss of income for a period of years. The risk of such a great exposure renders meaningless the rights granted a judgment creditor under RAP 7.2(c).

Equally important is RAP 8.1(a) which "provides a means of delaying the enforcement of a trial court decision in a civil case", *i.e.*, by supersedeas. RAP 8.1(b). If defendants' theory prevails, the judgment debtor need not post a supersedeas bond or other security. The debtor would know that he would get the most favorable of either the sale proceeds or market value plus interest. In effect the notice of appeal would be a substitute for supersedeas. That is not the purpose or intent of RAP 7.2(c) and RAP 8.1.

The Court of Appeals, without explanation, found Restatement of Restitution § 74 comment *d*, illustration 12, which we find directly on point, to not be applicable. Lacking such explanation, we examine the cases relied upon by the Court of Appeals to support its holding. *In re 1969 Chevrolet, 2–Door,* 134 Ariz. 357, 656 P.2d 646 (Ct. App. 1982) is not in point. The court carefully drew the distinction that the seizure was *unlawful* in contrast to this case where the execution was *authorized* by court rule. *Wade v. Rathbun,* 23 Cal. App. 2d 758, 760, 67 P.2d 765 (1937) is a trial court opinion reviewing a claim of a $120 exemption in municipal court. *Wade* had no restitution issue at all, only interpretation of an exemption statute. The quote from *Barron v. Phelps,* 238 S.W.2d 1016, 1019 (Ky. 1951) is dicta regarding a mootness claim. *DeMayo v. Lyons,* 360 Mo. 512, 228 S.W.2d 691 (1950) does not support the holding of the

Court of Appeals. The court made two holdings. First, as to property sold at execution, the debtor was entitled to the sale proceeds, which the court noted was at least equal to market value. Second, as to property not sold at execution nor produced, the creditor was liable for market value. That is quite different from these facts. Indeed, *Lancaster v. Simmons,* 621 S.W.2d 935, 941 (Mo. Ct. App. 1981), the same jurisdiction, states that *DeMayo* held that restitution should be of the amount received upon execution. The quotation from *Lytle v. Payette–Oregon Slope Irrig. Dist.,* 175 Or. 276, 286, 152 P.2d 934, 156 A.L.R. 894 (1944) is incomplete. The case involved a judgment creditor who kept possession of the property, the action was not for market value, but compensation for use of the property and waste, a totally different restitution issue than here present. However, in addition to the dicta quoted by the Court of Appeals, the court commented: "[I]t is said that restitution is usually limited to what has actually been received and retained by the creditor for his own benefit." *Lytle,* 175 Or. at 287.

*Hess v. Cedar Rapids State Bank,* 191 Iowa 685, 182 N.W. 813 (1921) does support the holding of the Court of Appeals. The court noted a divergence in opinion, rejected the textbook conclusion that the "proceeds only" doctrine was the better reasoned result, and cited only one case in support of its conclusion.

The second issue arises from the trial court's finding that "the overall promotional and sales program carried out by Defendants . . . did have a tendency to mislead or deceive." Finding of fact 3; Clerk's Papers of Appellant, at 5. The Court of Appeals reversed this finding. The Court of Appeals did not find that the finding of fact was not supported by substantial evidence, but rather stated: "Under these facts, we find the court's order [finding?] incongruent." *State v. A.N.W. Seed Corp.,* 56 Wn. App. 763, 772, 785 P.2d 838 (1990) (*A.N.W. Seed* II). The trial court had found that defendants did not intend to deceive nor were the farmers with whom defendants contracted deceived.

■ The Court of Appeals acknowledged the established principles that intent to deceive and proof of a specific party being deceived were not necessary predicates to a CPA violation. *A.N.W. Seed* II, at 771.

Apparently, the Court of Appeals concluded that there would be no *future* deception, therefore it held the finding was in error. The Court of Appeals asserted that defendants had been "effectively put out of business by the commencement of this action". *A.N.W. Seed* II, at 772. There is no finding of fact to that effect.

■ Even assuming that the defendants were effectively out of business, that fact is irrelevant. Cessation of the offending business may be relevant regarding an injunction against future activities. *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 553 P.2d 423 (1976), *appeal dismissed*, 430 U.S. 952, 51 L. Ed. 2d 801, 97 S. Ct. 1594 (1977). However, that is a separate issue from finding a violation has occurred already. That is what the trial court found and held, *i.e.*, a violation of the CPA *had* occurred, not that it was likely to occur in the future. The trial court did not issue an injunction, so the premise of no future violations upon which the Court of Appeals focused is not valid.

Finally, the third issue. Having concluded that the trial court erred in finding factually and holding legally that there was a violation of the CPA, the Court of Appeals concluded that the trial court necessarily erred in holding the State to be the prevailing party. This was error. The statute, RCW 19.86.080, vests discretion in the trial court to determine whether to award attorney fees to the prevailing party.

■ Apparently, the Court of Appeals reversed, as a matter of law, the trial court's exercise of discretion, but it did not address the standard which it employed as a basis for reversal. We hold that the statute vests discretion in the trial court to determine who is the prevailing party as part of its statutory discretion whether to award attorney fees to

that prevailing party. We have so held under similar statutes. *Progressive Animal Welfare Soc'y v. UW,* 114 Wn.2d 677, 683, 790 P.2d 604 (1990); *Blair v. WSU,* 108 Wn.2d 558, 572, 740 P.2d 1379 (1987). That finding by the trial court will be reversed only for an abuse of discretion. *Winans v. W.A.S., Inc.,* 112 Wn.2d 529, 772 P.2d 1001 (1989).

Because we have reinstated the trial court's finding of a violation of the CPA, there is no reason to disturb its holding that the State was the prevailing party. The State does not challenge denial of an award of attorney fees to it.

In summary, (1) the trial court and the Court of Appeals are reversed as to their holdings that the judgment debtor is entitled to market value of the property sold by execution of the unsuperseded judgment; (2) the Court of Appeals is reversed as to its holding that there was no violation of RCW 19.86; and (3) the Court of Appeals is reversed as to its reversal of the trial court's determination of the prevailing party.

CALLOW, C.J., and DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.