# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69932-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY WATERS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 28, 2014 |
| | ) | |

VERELLEN, A.C.J. — An instruction on a lesser included offense is properly given where there is affirmative evidence supporting an inference that only the lesser offense was committed to the exclusion of the charged offense. Here, the State presented affirmative evidence that Gregory Waters claimed he obtained permission to scrap property from a person he knew did not own that property. Viewed in the light most favorable to the State, this evidence supported an inference that Waters committed only second degree trafficking in stolen property, a lesser included offense of first degree trafficking in stolen property. Therefore, the trial court did not abuse its discretion in instructing the jury on the lesser included offense. Additionally, the trial court did not abuse its discretion in ordering Waters to pay restitution based upon the original cost of the stolen property. We affirm.

FACTS

Zach Waters and Kerri Uitbenhowen rented a home in Sedro-Woolley. The property included a barn where Zach[1] and Uitbenhowen were allowed to store things. The owners of the property, the Holtcamps, also stored approximately 300 cattle guards in the barn, left over from when they operated a dairy farm on the property.

Zach and Uitbenhowen went on vacation. When they returned, they believed someone had entered their home and they noticed that all of the cattle guards from the barn were missing. Uitbenhowen called the police.

An investigation led to Waters, Zach's father. He was charged by amended information with one count of theft in the second degree, one count of possessing stolen property in the second degree, one count of residential burglary, one count of burglary in the second degree, and one count of first degree trafficking in stolen property.

At trial, Brian Parberry, owner of Scrap-It Metal Recycling, testified that Waters scrapped a load of cattle guards on October 17, 2011, and that Parberry paid Waters $279.30. The trial court admitted photos of the load brought to Scrap-It by Waters on that date. Thomas Holtcamp, the owner of the cattle guards, testified that, based on the pictures, Waters scrapped approximately 50 of his cattle guards.

Zach testified that Waters had asked if he could scrap the cattle guards and that he said, "[N]o, it wasn't mine to give him permission."[2] Uitbenhowen testified that Waters never asked her if he could have the cattle guards and she never gave him permission to take them. Officer Dan Luvera testified that he talked to Waters during

---

[1] For ease of reference, we refer to Zach Waters by his first name and his father, appellant Gregory Waters, by his last name.

[2] Report of Proceedings (RP) (Oct. 24, 2012) at 43.

his investigation and that Waters indicated that Uitbenhowen had asked him to scrap the cattle guards and split the profit with her. Waters did not testify.

Over Waters' objection, the trial court instructed the jury on second degree trafficking in stolen property, the lesser included offense of first degree trafficking in stolen property. The jury returned a verdict of not guilty on every original count, but found Waters guilty of the lesser included offense, second degree trafficking in stolen property. As a result of a contested restitution hearing, the trial court ordered Waters to pay $1,750 in restitution for the stolen cattle guards.

Waters appeals.

## DISCUSSION

*Lesser Included Offense Instruction*

Waters argues that the trial court erred when it instructed the jury on second degree trafficking in stolen property, the lesser included offense for first degree trafficking in stolen property. Specifically, he argues that the instruction was not proper because there was no affirmative evidence that he recklessly sold the stolen cattle guards. We disagree.

In Washington, the right to a lesser included offense instruction is statutory.[3] A party is entitled to an instruction of a lesser included offense if two conditions are met.[4] First, under the legal prong of the test, each element of the lesser offense must be a necessary element of the charged offense.[5] Second, under the factual prong, the

---

[3] RCW 10.61.006 ("In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information.").

[4] State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

[5] State v. Berlin, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997) (citing id.).

evidence presented in the case must support an inference that only the lesser offense was committed to the exclusion of the charged offense.[6]

Waters does not dispute that the legal prong of the test is satisfied in this case. The issue is whether the factual prong is satisfied.

We view the evidence that purports to support a requested instruction in the light most favorable to the party who requested the instruction at trial.[7] When deciding whether or not an instruction should be given, we must consider all of the evidence that is presented at trial.[8] It is not enough that the jury might simply disbelieve the State's evidence.[9]

Where a trial court's decision to give an instruction is based on the facts of the case, we review this factual determination for abuse of discretion.[10] A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons.[11]

In State v. Fernandez-Medina, our Supreme Court addressed whether the trial court properly refused to give an instruction on the lesser included offense of second degree assault.[12] In that case, Fernandez-Medina fired several shots into an apartment and pointed his gun at one victim's head.[13] Witnesses then heard a click, but no bullet

---

[6] State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).

[7] Id. at 455-56.

[8] Id. at 456.

[9] Id.

[10] State v. LaPlant, 157 Wn. App. 685, 687, 239 P.3d 366 (2010).

[11] State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

[12] 141 Wn.2d 448, 449-50, 6 P.3d 1150 (2000).

[13] Id. at 451.

discharged. The defendant was charged with attempted murder or, in the alternative, assault in the first degree.[14] Based on evidence that a gun can make various sounds without pulling the trigger, Fernandez-Medina requested a jury instruction for second degree assault, the lesser included charge, which did not include intent to do serious bodily harm.[15] The Supreme Court held that he was entitled to the instruction because the testimony given by gun experts supported an inference that he had not pulled the trigger and, therefore, committed only the lesser included offense of second degree assault.[16]

Under RCW 9A.82.050(1), first degree trafficking in stolen property requires proof that the defendant "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others" or "knowingly traffics in stolen property." In contrast, under RCW 9A.82.055(1), second degree trafficking in stolen property requires proof that the defendant "recklessly" traffics in stolen property. Criminal recklessness requires that a person "knows of and disregards a substantial risk that a wrongful act may occur."[17] To resolve whether the factual prong is satisfied, we must determine whether there was evidence affirmatively establishing that Waters committed only the lesser offense, second degree trafficking in stolen property.[18]

Here, there was affirmative evidence that Waters acted recklessly in scrapping the cattle guards. Officer Luvera testified that during his investigation, he asked Waters

---

[14] Id.

[15] Id. at 452.

[16] Id. at 456-57.

[17] RCW 9A.08.010(1)(c).

[18] See Fernandez-Medina, 141 Wn.2d at 456.

5

to explain how he obtained the cattle guards and why he sold them to Scrap-It. Officer

Luvera described Waters' response for the jury:

> He said that he got a call from [Uitbenhowen], and [Uitbenhowen] wanted him to scrap some material that was on the property that they were residing at. And that it's my understanding that the monies that [Waters] would get from scrapping the material would be split between he and [Uitbenhowen].[19]

Based upon this evidence, the jury could rationally find that Waters had permission from

Uitbenhowen to scrap the cattle guards. Drawing all inferences in favor of the State, as

we must, there was affirmative evidence that Waters knew Uitbenhowen was renting the

property and the cattle guards did not belong to her. Waters argues that Officer

Luvera's testimony only affirmatively shows that he had permission to scrap the cattle

guards and, therefore, negates any inference that he recklessly sold stolen property.

But the jury could have reasonably found that Waters acted recklessly by selling the

cattle guards without obtaining permission from the true owners, the Holtcamps.

It is true that, in order to find Waters guilty of second degree trafficking in stolen

property, the jury must necessarily have disbelieved Zach and Uitbenhowen's testimony

that they did not give Waters permission to scrap the cattle guards. But that was not the

only evidence presented by the State. The affirmative evidence provided by Officer

Luvera supports an inference that Waters acted recklessly, as required for second

degree trafficking in stolen property.

*Restitution*

Waters argues that the trial court abused its discretion by awarding restitution

exceeding the scrap value of the cattle guards. We disagree.

---

[19] RP (Jan. 8, 2013) at 122.

"A court's authority to order restitution is derived solely from statute."[20] A judge must order restitution whenever a defendant is convicted of an offense that results in loss of property.[21] The amount of restitution awarded must be based "'on easily ascertainable damages.'"[22] While the claimed loss "'need not be established with specific accuracy,' it must be supported by 'substantial credible evidence.'"[23] "'Evidence supporting restitution "is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture."'"[24] The State must prove the damages by a preponderance of the evidence.[25] A decision to impose restitution is generally within the discretion of the trial court, and the size of the award will not be disturbed on appeal absent an abuse of discretion.[26] "A court abuses its discretion only when its order is manifestly unreasonable or untenable."[27] It is not an abuse of discretion to utilize replacement value instead of fair market value.[28]

Here, the trial court observed that the owner could benefit from having cattle guards available for a sale of the barn for use as a dairy. The court calculated the total

---

[20] State v. Gonzalez, 168 Wn.2d 256, 261, 226 P.3d 131 (2010).

[21] RCW 9.94A.753(5).

[22] State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008) (quoting RCW 9.94A.753(3)).

[23] Id. (quoting State v. Fleming, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994), overruled on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)).

[24] Id. (quoting State v. Hughes, 154 Wn.2d 118, 154, 110 P.3d 192 (2005), abrogated on other grounds by Recuenco, 548 U.S. at 212).

[25] Id.

[26] State v. Gray, 174 Wn.2d 920, 924, 280 P.3d 1110 (2012).

[27] Id.

[28] See State v. Smith, 42 Wn. App. 399, 401, 711 P.2d 372 (1985) (restitution not limited to "only the fair market value, not the replacement cost, of the items stolen and later recovered and sold").

restitution due by multiplying the approximate number of cattle guards scrapped by the average original cost per cattle guard. Holtcamp testified that, based on the photograph of Waters' truck at Scrap-It, Waters scrapped approximately 50 of the Holtcamps' cattle guards. Additionally, Holtcamp completed a victim loss statement where he indicated that the original price of the cattle guards ranged from $30 to $42 each. Based upon this evidence, the trial court found that Waters scrapped 50 cattle guards with an average value of $35 each, resulting in total restitution due of $1,750.

Waters argues that this amount is an abuse of discretion because it does not reflect the fair market value of the cattle guards, which he argues equals the scrap value of $279.30. But Waters cites no authority requiring restitution to be based on fair market value.[29] Because the amount awarded was easily ascertainable, supported by the record, and consistent with the concept of replacement value, the trial court did not abuse its discretion.

Waters argues that the restitution amount must consider depreciation of the asset, citing State v. Wilson.[30] He also argues that a restitution award must be based on the proceeds of sale at the time of the loss, citing State v. A.N.W. Seed Corporation.[31] But neither of these cases involved an award of restitution in the context of a criminal trial. They are not persuasive.

---

[29] Waters cites Fleming, 75 Wn. App. at 275, for the premise that restitution is *generally related to* fair market value. But Fleming does not support an argument that restitution is limited to fair market value only.

[30] 6 Wn. App. 443, 493 P.2d 1252 (1972).

[31] 116 Wn.2d 39, 802 P.2d 1353 (1991).

Waters argues that there was not testimony about the value of the cattle guards other than their value as scrap metal. This is not true. Holtcamp testified that he paid approximately $30 each for the cattle guards in the mid-1990s.

Finally, Waters argues that the Sixth Amendment bars the trial court from imposing restitution based on a loss not found by the jury. But in State v. Kinneman, our Supreme Court held that there is no right to a jury trial to determine facts on which restitution is based.[32] Waters cites no authority that restitution awards require jury findings regarding the scope and amount of the victim's loss. His attempt to distinguish Kinneman on this point is not persuasive.

Affirmed.

WE CONCUR:

_____

_____

_____

_____

[32] 155 Wn.2d 272, 282, 119 P.3d 350 (2005).