[No. 78353-5.   En Banc.]
Argued January 11, 2007.    Decided June 7, 2007.

SAYED ZIA EHSANI ET AL., *Respondents*, v. THE MCCULLOUGH FAMILY PARTNERSHIP ET AL., *Defendants*, DAVID D. CULLEN, *Petitioner*.

*Christopher I. Brain* (of *Tousley Brain Stephens, PLLC*) and *Allyson J. Ferguson* (of *Ferguson Sell, PLLC*), for petitioner.

*Helmut Kah*, for respondents.

*David D. Swartling, Kasey D. Huebner*, and *Stanley B. Taylor* on behalf of the Washington State Bar Association, amicus curiae.

¶1 J.M. JOHNSON, J. — Under RAP 12.8, a trial court judgment debtor who has satisfied the judgment against him may be entitled to restitution following a successful appeal. However, such restitution is warranted only in "appropriate circumstances."[1] In accordance with the common law of restitution, as set forth in the *Restatement of Restitution* § 74 (1937), such circumstances do not include restitution from nonparties to the judgment, as was sought in this case. An attorney who receives funds into his client trust account, pursuant to a favorable trial court judgment, then disburses those funds as his client directs, is not liable in restitution when said judgment is reversed on appeal. This is so even where the attorney disburses a portion of the funds to himself, for services rendered in the case. We hold the trial court correctly denied restitution and reverse the Court of Appeals.

---

[1] RAP 12.8.

FACTS AND PROCEDURAL HISTORY

¶2 Pursuant to a trial court judgment, plaintiff/respondent Sayed Zia Ehsani paid approximately $77,900 into the client trust account of his trial opponents' attorney, petitioner David D. Cullen. At the direction of his clients, Cullen distributed these funds to his clients' creditors, including himself. Later, Ehsani successfully appealed the trial court's judgment. On remand, Ehsani filed a motion for restitution pursuant to RAP 12.8. Specifically, he asked the court to order Cullen to restore the full $77,900 previously distributed from Cullen's client trust account. The trial court denied Ehsani's motion and Ehsani appealed. On appeal, Division One of the Court of Appeals held that the trial court erred in denying Ehsani's RAP 12.8 motion. Relying primarily on its previous decision in *In re Marriage of Mason*, 48 Wn. App. 688, 740 P.2d 356 (1987), Division One held that Cullen was liable to Ehsani in restitution for the full $77,900. *Sayed Zia Ehsani v. McCullough Family P'ship*, noted at 130 Wn. App. 1047, 2005 Wash. App. LEXIS 3181 (unpublished per curiam). Cullen successfully petitioned this court for review.

ANALYSIS

A. Standard of Review

▮▮ ¶3 Restitution under RAP 12.8 is an equitable remedy and "trial courts have broad discretionary power to fashion equitable remedies." *In re Foreclosure of Liens*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). A trial court's determination whether to award restitution under RAP 12.8 is reviewed for abuse of discretion. *Id.*

B. Interpretation of RAP 12.8

▮▮ ¶4 Determining whether the trial court abused its discretion in denying Ehsani's motion for restitution under RAP 12.8 requires inquiry into the proper application of that rule. Such an inquiry must begin with the rule's plain language. RAP 12.8 reads as follows:

If a party has voluntarily or involuntarily partially or wholly satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate to restore to the party any property taken from that party, the value of the property, *or in appropriate circumstances, provide restitution.* An interest in property acquired by a purchaser in good faith, under a decision subsequently reversed or modified, shall not be affected by the reversal or modification of that decision.

(Emphasis added.) The plain language of RAP 12.8 is ambiguous because the phrase "in appropriate circumstances" is not defined therein or in any related statute. This language inherently requires judicial construction based on other sources of authority to determine when restitution is appropriate under RAP 12.8.

1. *"Appropriate circumstances" for providing restitution under RAP 12.8 may be identified by looking to the common law of restitution as set forth in the* Restatement of Restitution § 74.

■ ¶5 This court has previously addressed the construction of RAP 12.8. In *State v. A.N.W. Seed Corp.*, 116 Wn.2d 39, 45, 802 P.2d 1353 (1991), this court stated that "[i]n construing a court rule, as in construing a statute, the court must examine the purpose, the historical background, and when it codifies a principle of common law, ascertain the generally accepted common law."

■ ¶6 In terms of purpose and historical background, the ambiguous language from RAP 12.8 that is central to this case ("in appropriate circumstances, provide restitution") was added to the rule in 1994, at the recommendation of the Washington State Bar Association. 3 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 12.8, at 178 (6th ed. 2004). The purpose of the amendment was described by its drafters as follows:

"Rule 12.8 provides that when a party has wholly or partially satisfied a trial court decision which is reversed or modified by the appellate court, the trial court is to 'restore to the party any

property taken from that party, or the value of the property.' The Washington Supreme Court has held, however, that under certain circumstances a party may be entitled to both return of the property and damages for loss of use. Plaza Farmers' Union Warehouse & Elevator Co. v. Tomlinson, 183 Wash. 617, 49 P.2d 36 (1935). The Court has also held that a judgment debtor who loses property through execution may not recover the value of the property, but only the amount realized on execution plus interest on the funds received from the execution by the judgment creditor. State v. A.N.W. Seed Corp., 116 Wn.2d 39, 802 P.2d 1353 (1991). *In this latter case, the Court indicated that the principles to be applied are those of restitution as set forth in the Restatement of Restitution.*

"The rule as now written is both narrower and broader than it has been interpreted. *Though the Supreme Court has consistently followed general principles of restitution in this area, the existing language of the rule suggests a specificity that may be misleading.* The proposed amendment, which substitutes the phrase 'provide restitution to the party' for the existing language, alerts the practitioner to look to the case law because the language of the rule alone does not give sufficient guidance."

*Id.* at 178-79 (emphasis added) (quoting Drafters' Comment, 1994 Amendment). Thus, the historical background of RAP 12.8 indicates that the purpose of the "in appropriate circumstances, provide restitution" language is to encourage both practitioners and courts to look to the common law of restitution in applying or construing RAP 12.8.

¶7 In terms of generally accepted common law principles, this court has indicated that *Restatement of Restitution* § 74 is an appropriate source to be used in construing RAP 12.8. *See A.N.W. Seed Corp.*, 116 Wn.2d at 45-46 (using section 74 and comment to determine whether restitution warranted under RAP 12.8); *see also Estate of Spahi v. Hughes-Nw., Inc.*, 107 Wn. App. 763, 27 P.3d 1233 (2001); *Foreclosure of Liens*, 123 Wn.2d 197; *In re Marriage of Stern*, 68 Wn. App. 922, 846 P.2d 1387 (1993). Section 74, titled "Judgments Subsequently Reversed," provides as follows:

A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

RESTATEMENT OF RESTITUTION § 74. This is the general rule of restitution applicable in cases involving RAP 12.8. However, like any general rule, this one has a number of exceptions.

¶8 As explained by Justice Cardozo, exceptions to the general rule of restitution embodied in section 74 arise in circumstances where to require a party to make restitution would not serve the purpose of remedying unjust enrichment:

[T]he rule, even though general in its application, is not without exceptions. A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function. The claimant to prevail must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it. The question no longer is whether the law would put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it.

*Atl. Coast Line R.R. v. Florida*, 295 U.S. 301, 309-10, 55 S. Ct. 713, 79 L. Ed. 1451 (1935) (citations omitted). An example of such an exception applies to officers responsible for execution sales. Such officers are not liable in restitution to judgment debtors where, before reversal, the officers have paid the proceeds of the execution sale to the person entitled by the judgment to receive the money. RESTATEMENT OF RESTITUTION § 74 cmt. g. Similarly, a person who purchases a judgment debtor's property "at a valid execution sale upon a judgment which is not void" is entitled to retain the property "if, before reversal, he has obtained the legal title and has paid value therefor." *Id.* cmt. i. These excep-

tions and others, together with the general rule of section 74, make up the common law of restitution, which informs this court's interpretation of the "appropriate circumstances" under which restitution will be provided pursuant to RAP 12.8.

> 2. *In accordance with* Restatement of Restitution *§ 74 comment h, the present case does not present "appropriate circumstances" for providing restitution under RAP 12.8.*

¶9 Looking to section 74, there is an exception to the general rule of restitution upon reversal of a judgment directly addressing the question presented in this case. Specifically, comment h to section 74, titled *"Restitution from attorney or agent of judgment creditor,"* provides, in relevant part:

> An attorney . . . of the judgment creditor who receives payment from the judgment debtor . . . and who pays it to the judgment creditor before reversal is not liable if the judgment was valid before reversal and if he had no knowledge of any fraud used in securing it. Under the same conditions he is under no duty to repay money which he received on account of the judgment creditor and which he retains as payment for services . . . (see Illustration 20) since he received the money as a bona fide purchaser.

RESTATEMENT OF RESTITUTION § 74 cmt. h. Illustration 20 provides even more specific guidance:

> A obtains a valid judgment against B for $3000. B pays the amount of the judgment to C, A's attorney. At A's direction C expends $1000 to satisfy A's creditors and retains $2000 as compensation for his services in this suit and in previous ones. Upon reversal of the judgment, B is not entitled to restitution from C.

This illustration mirrors the facts in the present case. The McCulloughs ("A" in example) received a judgment against Ehsani ("B") for attorney fees totaling $97,459.00 and expert accountant fees totaling $8,951.50, plus interest.

Ehsani paid part of this amount ($77,900) into the client trust account of Cullen ("C"), the McCullough's attorney. Then, at the McCulloughs' direction, Cullen expended various amounts of the $77,900 to satisfy the McCulloughs' creditors and also retained a portion of the $77,900 as compensation for his services in the suit. Therefore, according to the illustration, upon reversal of the judgment, Ehsani ("B") is not entitled to restitution from Cullen ("C" in example).

¶10 Together, comment h and illustration 20 provide a definitive answer to the question presented in this case. Essentially, these provisions confirm that "appropriate circumstances" under which a court will provide restitution pursuant to RAP 12.8 do not include a situation like the case at bar. An attorney who receives a monetary judgment on behalf of his clients and, upon request, disburses those funds to his clients' creditors, including himself, is not liable in restitution to the judgment debtor when said judgment is subsequently reversed on appeal. That this is the correct rule of law is confirmed by case law from numerous jurisdictions.[2]

¶11 The conclusion that comment h to section 74 provides the correct rule is further confirmed by the fact that its application results in an outcome consistent with the underlying purpose of the law of restitution. The purpose of restitution is to remedy unjust enrichment. *See* RESTATEMENT OF RESTITUTION § 1 ("A person who has been unjustly en-

---

[2] *See Mohamed v. Kerr*, 91 F.3d 1124 (8th Cir. 1996) (citing RESTATEMENT OF RESTITUTION § 74 cmt. h as general rule of law in this area but distinguishing case and holding attorney was required to make restitution); *Cox v. Cox*, 56 Mass. App. Ct. 864, 780 N.E.2d 951 (2002) (relying on RESTATEMENT OF RESTITUTION § 74 cmt. h, illus. 20 in holding that attorney was not required to make restitution); *Excel Corp. v. Jimenez*, 269 Kan. 291, 7 P.3d 1118 (2000) (citing RESTATEMENT OF RESTITUTION § 74 cmt. h as general rule of law in this area but distinguishing case and holding attorney was required to make restitution); *Berger v. Dixon & Snow, PC*, 868 P.2d 1149 (Colo. Ct. App. 1993) (same); *Martin v. Lenahan*, 658 So. 2d 119 (Fla. Dist. Ct. App. 1995) (relying on RESTATEMENT OF RESTITUTION § 74 cmt. h, illus. 20 in holding that attorney was not required to make restitution); *Herkert v. Stauber*, 127 Wis. 2d 87, 378 N.W.2d 704 (1985) (relying on RESTATEMENT OF RESTITUTION § 74 cmt. h, illus. 20 in holding that attorney was not required to make restitution).

riched at the expense of another is required to make restitution to the other."). Yet, there is no unjust enrichment vis-à-vis the judgment debtor where a party receives only that to which he is entitled under the terms of a valid, preexisting agreement with the judgment creditor. *See Cox v. Cox*, 56 Mass. App. Ct. 864, 780 N.E.2d 951, 962 (2002) ("Because the bona fide creditor is entitled to payment regardless of the judgment's validity, that creditor is not unjustly enriched by retention of the payment after the judgment's reversal."). Here, Cullen received payment from the McCulloughs for legal services rendered pursuant to a preexisting fee agreement. It is true that this receipt constituted a benefit, at least indirectly, provided by Ehsani, but it does not follow that Cullen was unjustly enriched at Ehsani's expense. The McCulloughs were the judgment creditors in this case; they were the beneficiaries of the trial court's error. Thus, it is the McCulloughs, not Cullen, who may be liable to Ehsani in restitution.[3] *See Atl. Coast Line R.R.*, 295 U.S. at 309 ("what has been lost to a litigant under the compulsion of a judgment shall be restored thereafter, in the event of a reversal, *by the litigants opposed to him, the beneficiaries of the error*" (emphasis added)).

¶12 In sum, the present case does not present "appropriate circumstances" for an award of restitution to Ehsani from Cullen under RAP 12.8. While this conclusion alone is sufficient grounds for reversal, a specific discussion of the Court of Appeals analysis follows to provide additional guidance as to postappeal restitution of attorney fees in particular.

---

[3] At first glance, it may seem unfair to conclude that Ehsani is limited to seeking restitution from the McCulloughs, as they previously filed for bankruptcy and, thus, cannot actually provide Ehsani with relief. However, Ehsani had the ability to protect himself from this precise situation by filing a supersedeas bond, *see* RAP 8.1; yet, he chose not to do so. While filing a bond is not a prerequisite to recovery under RAP 12.8, *see In re Marriage of Stern*, 68 Wn. App. at 931-32, failure to do so entails assuming the risk of execution prior to reversal and no recovery thereafter. That Ehsani took this risk and lost suggests that he is not entitled to equitable relief. *Id.* at 932 (relief provided by RAP 12.8 is "equitable in nature" and, thus, in awarding such relief courts "should . . . consider the availability of a legal remedy under RAP 8.1").

C. Restitution of Attorney Fees under the Rule from *Mason*

¶13 The Court of Appeals relied predominantly on *Mason*, 48 Wn. App. 688, in deciding that Cullen should pay restitution to Ehsani. That court suggested that a general rule could be distilled from *Mason*, namely that "an attorney for an initially prevailing party" can be required "to restore fees awarded during a . . . proceeding when the award [is] reversed." *Ehsani*, 2005 Wash. App. LEXIS 3181, at *6. However, *Mason* actually stands for the more limited proposition that an attorney paid pursuant to a statutory scheme making him a real party in interest may be liable in restitution for the amount of his fees when the trial court's favorable judgment is subsequently reversed. 48 Wn. App. at 692. Absent such a statutory scheme, the general rule set forth in comment h to section 74 of the *Restatement of Restitution* should apply. *See supra* part B.2.

¶14 As an initial matter, the Court of Appeals errs in suggesting that under RAP 12.8 reversal of a trial court judgment entitles judgment debtors to restitution of attorney fees as a matter of right. *See Ehsani*, 2005 Wash. App. LEXIS 3181, at *6 (citing *Mason*, 48 Wn. App. at 693). This assertion is fundamentally at odds with the equitable nature of the restitution remedy.

¶15 As explained by the Supreme Court in *Atlantic Coast Line Railroad*, 295 U.S. at 310 (quoting *Gould v. McFall*, 118 Pa. 455, 456-57, 12 A. 336 (1888)):

> Suits for restitution upon the reversal of a judgment have been subjected to the empire of that principle like suits for restitution generally. "Restitution is not of mere right. It is *ex gratia*, resting in the exercise of a sound discretion, and the court will not order it where the justice of the case does not call for it . . . ."

Division One itself has previously recognized this fundamental principle of restitution law. *See Town Concrete Pipe of Wash., Inc. v. Redford*, 43 Wn. App. 493, 499, 717 P.2d 1384 (1986) ("A party must make restitution when he has

been unjustly enriched at the expense of another. The mere fact of benefit alone is not enough. Liability only attaches where the circumstances of the benefit would make it unjust to retain it." (citations omitted)). Additionally, the plain language of RAP 12.8 confirms that its restitution remedy is discretionary, not a matter of right. Restitution is to be provided by the trial court "in appropriate circumstances"; it is not automatic upon the modification of a judgment by an appellate court. *See* RAP 12.8. Thus, the Court of Appeals erred in concluding that, under *Mason*, Ehsani should automatically receive restitution in the present case.

¶16 However, *Mason* itself was not wrongly decided. Rather, the Court of Appeals simply overstated the holding of *Mason* in attempting to resolve the case at bar. Because of the particular statutory scheme under which the attorney in *Mason* received his fees, he was a real party in interest; thus, that case was decided correctly. Yet, those facts render *Mason* distinguishable from the present case.

¶17 The attorney in *Mason* received his award of attorney fees pursuant to RCW 26.09.140, a marital dissolution statute, which provides, in relevant part:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after the entry of judgment.
>
> . . . .
>
> The court may order that the attorney's fees be paid directly to the attorney who may enforce the order in his name.

*See also Mason*, 48 Wn. App. at 690 (quoting in part RCW 26.09.140). Specifically, the attorney in *Mason* was paid pursuant to the final provision of this statute. *Id.*

¶18 While the Court of Appeals attempted, in its opinion below, to diminish the importance of RCW 26.09.140 to its decision in *Mason*, that statute was fundamental to the court's reasoning as it is relevant to the present case. Specifically in *Mason*, Division One justified its refusal to rely on comment h to section 74 and its supporting case by stating that "[i]n none of these cases was the attorney paid directly pursuant to a judgment requiring the opposing party to pay the attorney fees and naming the attorney as a judgment creditor in his own right." 48 Wn. App. at 692. In sum, while the Court of Appeals was technically correct when it cited *Mason* for the proposition that an attorney need not be a party to the trial court litigation to be required to restore fees, *see Ehsani*, 2005 Wash. App. LEXIS 3181, at *6, the court erred in suggesting that the holding of that case reaches attorneys who are not in an analogous position, i.e., not real parties in interest.

¶19 That an attorney who is not a party to the action but is a real party in interest can be required to make restitution is confirmed by case law from a number of other jurisdictions. *See, e.g., Cox*, 780 N.E.2d at 960-63 (attorney not required to make restitution, in part, because no contingent fee arrangement or statutory equivalent making him a real party in interest); *Champion Int'l Corp. v. McChesney*, 239 Mont. 287, 779 P.2d 527, 529-30 (1989) (attorney required to make restitution, in part, because of statutorily based contingent fee arrangement); *Transamerica Ins. Group v. Adams*, 62 Or. App. 419, 661 P.2d 937, 940 (1983) (same). Ultimately, this case law as well as our own suggests that, in applying RAP 12.8, Washington courts should look to *Restatement of Restitution* § 74 cmt. k[4] for attorneys who are real parties in interest due to the manner in which they are paid, while looking to *Restate-*

---

[4] Comment k, titled "Restitution against other parties," provides:

After the reversal of a judgment any person who, although not a party to the action, was a real party in interest and who received payment in whole or in part as the beneficial owner or as one of several owners, is under a duty to restore the amount received by him.

*ment of Restitution* § 74 cmt. h for attorneys who are bona fide creditors of their clients.

¶20 Here, Cullen was a bona fide creditor of his clients. Cullen did not receive payment pursuant to a statutory scheme making him a real party in interest. Instead, Cullen was paid by the judgment creditors, his clients, for legal services rendered. The fact that these funds were held in Cullen's trust account does not alter this analysis.[5] Because Cullen is a bona fide creditor of the McCulloughs, not a real party in interest, these are not "appropriate circumstances" for providing restitution to Ehsani from Cullen under RAP 12.8.

¶21 In sum, contrary to the opinion of the Court of Appeals, *Mason* is not dispositive of the present case and the trial court did not abuse its discretion in denying Ehsani's motion for restitution. The correctness of this resolution is further confirmed by the fact that it alleviates important policy concerns raised by the Court of Appeals decision.

## D. Attorney-Client Relations and the Finality of Trial Court Judgments

¶22 In short, the Court of Appeals incorrectly held that any distribution of judgment funds from an attorney's client trust account, while the judgment is subject to appeal, is made at the attorney's peril. *See Ehsani*, 2005

---

[5] The Court of Appeals seems to suggest that former RPC 1.14 (2002) provided Cullen with ultimate authority over the funds in his trust account, thus rendering him a real party in interest liable in restitution. *See Ehsani*, 2005 Wash. App. LEXIS 3181, at *10. However, this notion is expressly contradicted by the plain language of that rule. *See* former RPC 1.14(b)(4) ("A lawyer shall . . . [p]romptly pay or deliver to the client as requested by the client the funds . . . in the possession of the lawyer which the client is entitled to receive."). Likewise, Division One itself has previously recognized that former RPC 1.14 imposed on attorneys the duty to distribute trust account funds in accordance with their clients' wishes. *Hetzel v. Parks*, 93 Wn. App. 929, 940, 971 P.2d 115 (1999). While the Court of Appeals is correct that "[f]unds 'potentially' belonging to a lawyer 'may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client,'" *Ehsani*, 2005 Wash. App. 3181, at *10 n.19 (quoting former RPC 1.14(a)(2)), this provision does not alter the fact that ultimate authority over client funds rests with the client.

Wash. LEXIS 3181, at *10. This holding is problematic given the professional responsibilities of attorneys in regards to client funds held in their trust accounts.

¶23 Former RPC 1.14 (2002) imposed on attorneys a professional duty to distribute trust account funds in accordance with their clients' wishes and in keeping with the highest fiduciary standards. *See In re Disciplinary Proceeding Against McKean*, 148 Wn.2d 849, 864-65, 64 P.3d 1226 (2003); *Hetzel v. Parks*, 93 Wn. App. 929, 940, 971 P.2d 115 (1999).[6] This same duty is presumably now imposed by RPC 1.15A, which currently governs the safeguarding of client property. Clients often wish to utilize funds received as a result of favorable trial court judgments to settle various debts. Such execution by judgment creditors is expressly provided for under Washington court rules. *See* RAP 7.2(c). Because of the trust account system, and in accordance with RPC 1.15A, attorneys frequently facilitate this execution process.

¶24 The Court of Appeals decision would subject attorneys involved in the execution process to significant financial hardship merely for fulfilling their professional responsibilities. For in order to act in accordance with RPC 1.15A and assist their clients with execution, attorneys would likely assume personal liability for the entire judgment amount. Additionally, the Court of Appeals decision creates an inherent conflict of interest between attorneys and their clients regarding the action to be taken with regard to client funds in the attorneys' trust accounts. Clients will often want judgment funds distributed immediately; yet their attorneys will be motivated to delay distribution until after appeal to avoid becoming personally liable to the judgment

---

[6] There are a number of ethics opinions from the Washington State Bar Association (WSBA) which confirm that Washington attorneys have an ethical obligation to obey their clients' directions with regard to disbursing or encumbering client funds held in the attorneys' trust accounts. WSBA Amicus Curiae Mem. in Supp. at 6 (citing, inter alia, Informal Opinion 1674 (1996), Informal Opinion 1428 (1991), Informal Opinion 1026 (1986)). All ethics opinions are available at www.wsba.org.

debtor. Reversing the Court of Appeals decision avoids these negative consequences for attorney-client relations.

¶25 Our decision also coincides with important policy considerations regarding the finality of trial court judgments. As noted above, RAP 7.2(c) expressly authorizes judgment creditors to execute their judgments.[7] Yet, this authority would essentially be rendered meaningless if attorneys involved in the execution process were required to assume the type of liability Ehsani seeks to impose. Few attorneys would be willing to provide the necessary assistance to their clients to distribute judgment funds placed in the attorney's trust account when to do so would require the attorney to assume personal liability for the entire judgment amount. Thus, at least in cases where attorney assistance is required to act upon a valid judgment, "[t]he risk of such a great exposure [would] render[ ] meaningless the rights granted a judgment creditor under RAP 7.2(c)." *A.N.W. Seed Corp.*, 116 Wn.2d at 48.

¶26 Finally, to agree with the Court of Appeals would render the bond mechanism of RAP 8.1 superfluous. If Ehsani were to prevail, future judgment debtors may conclude that filing a supersedeas bond is unnecessary because they can always recover through restitution from their opponent's counsel, at least whenever the judgment was paid through counsel. Such a result would strip RAP 8.1 of its essential purpose, as well as prevent judgment creditors from acting on valid judgments in accordance with RAP 7.2(c). In sum, reversing the Court of Appeals decision furthers the underlying purposes of both RAP 7.2(c) and RAP 8.1.

---

[7] RAP 7.2(c), titled "Enforcement of Trial Court Decision in Civil Cases," provides:

> In a civil case, except to the extent enforcement of a judgment or decision has been stayed as provided in rules 8.1 or 8.3, the trial court has authority to enforce any decision of the trial court and a party may execute on any judgment of the trial court. Any person may take action premised on the validity of a trial court judgment or decision until enforcement of the judgment or decision is stayed as provided in rules 8.1 or 8.3.

CONCLUSION

¶27 In accordance with the common law of restitution as set forth in *Restatement of Restitution* § 74, we hold that this case does not present "appropriate circumstances" for restitution under RAP 12.8. An attorney who receives a monetary judgment on behalf of his clients, into his client trust account, may disburse those funds to his clients' creditors, including himself. Such distribution does not render the attorney liable in restitution to the judgment debtor if the judgment is subsequently reversed on appeal. The trial court did not abuse its discretion in denying Ehsani's motion for restitution; accordingly, we reverse.

MADSEN, SANDERS, BRIDGE, OWENS, and FAIRHURST, JJ., and VAN DEREN, J. PRO TEM., concur.

¶28 CHAMBERS, J. (concurring) — The importance of this case is not its mundane association with principles of restitution. We accepted review of this case because of the unique challenges faced by lawyers who hold funds belonging to others in trust. We must resolve this case by interpreting the Rules of Professional Conduct—not common law restitution. I concur with the majority's result and some of its reasoning. I write separately because I disagree with the majority's conclusion that this case does not present "appropriate circumstances" for providing restitution under RAP 12.8. I believe a trial court could, if principles of restitution and equity were the sole consideration, order David Cullen to return to Sayed Zia Ehsani the attorney fees Ehsani was ordered to pay by the court. It is, however, the power and force of the Rules of Professional Conduct which compel an attorney to follow his or her client's directive to disburse funds from client trust accounts. The Rules of Professional Conduct, not restitution, demand a lawyer's compliance.

RESTITUTION

¶29 I agree with the majority's preliminary analysis that, when analyzing RAP 12.8, we "look to the common law

of restitution" and specifically the *Restatement of Restitution* § 74 (1937). Majority at 590-92. I do not agree, however, that these sources compel the result the majority advocates. Furthermore, our inquiry is not whether an order of restitution should or should not have been granted, but rather whether the trial court's decision to deny restitution was an abuse of its "broad discretionary power." Majority at 589 (quoting *In re Foreclosure of Liens*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994)). The majority's conclusion that "this case does not present 'appropriate circumstances' for restitution under RAP 12.8," majority at 602, is a broader statement than the question presented compels. I believe a trial court could, consistent with the principles of restitution and within its "broad discretion," order restitution in favor of Ehsani.

¶30 The majority contends "Illustration 20" in the *Restatement* "mirrors" the facts of our case. Majority at 593-94. The illustration is as follows:

> A obtains a valid judgment against B for $3000. B pays the amount of the judgment to C, A's attorney. At A's direction C expends $1000 to satisfy A's creditors and retains $2000 as compensation for his services in this suit and in previous ones. Upon reversal of the judgment, B is not entitled to restitution from C.

RESTATEMENT OF RESTITUTION § 74 cmt. h, illus. 20. This illustration does not mirror the facts before this court. In the present action, the trial court ordered Ehsani to pay for attorney fees incurred during the trial. Ehsani seeks restitution for the attorney fees he, in effect, paid to Cullen pursuant to a trial court judgment. In the illustration, on the other hand, an attorney is owed money for legal services unrelated to the judgment later reversed on appeal. Furthermore, the services that *are* related to the judgment were paid for out of the judgment itself, not as an express award of attorney fees. Finally, the initial judgment creditor, A, is not bankrupt as the McCulloughs proved to be when the judgment debtor, B, seeks restitution. Nor does the illustration presume the attorney was aware of his or

her client's bankruptcy and inability to pay his or her attorney fees, as was Cullen. I find the *Restatement of Restitution* uncompelling and certainly uncontrolling under the facts of this case.

## RULES OF PROFESSIONAL CONDUCT

¶31 Despite my reservations with respect to the majority's application of the common law of restitution, I concur in the result. I agree with the majority's analysis of former RPC 1.14 (2002) (current RPC 1.15A) that the Court of Appeals decision "creates an inherent conflict of interest between attorneys and their clients regarding the action to be taken with regard to client funds in the attorneys' trust accounts." Majority at 600. The Rules of Professional Conduct require attorneys to distribute trust account funds at the behest of their clients. The Court of Appeals opinion reaches all funds Cullen paid out of his client trust account in accordance with his client's wishes. If an attorney faces liability for such payments, the incentive to comply with RPC 1.15A (former RPC 1.14) is diminished by the attorney's reasonable self-interest in avoiding restitution payments for money never owned, never used, and never enjoyed.[8] Exposing an attorney to liability for compliance with the Rules of Professional Conduct undermines the rules. For this reason, I concur.

C. JOHNSON, J., concurs with CHAMBERS, J.

---

[8] It is perhaps a different question if the Court of Appeals opinion ordered restitution solely for Cullen's attorney fees, as presumably the attorney can retain whatever funds received from their client and make restitution if so ordered.