IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MELODY PETLIG, an individual, <br><br>            Appellant, <br><br>        v. <br><br> THE ESTATE OF GARY WEBB, by and through its Administrator, Jessica Webb, and Jessica Webb, individually and in her marital community interest, <br><br>            Defendants, <br><br> FARR LAW GROUP, PLLC, and CARSON LAW GROUP, <br><br>            Respondents. | No. 87335-1-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

DÍAZ, J. — In this second appeal, Melody Petlig seeks to recoup from Farr Law Group and Carson Law Group ("the attorneys") the value of the life estate of a home, to which this court found she was entitled in her first appeal. Petlig's daughter, Jessica Webb, had evicted Petlig from the home at issue and, before this court ruled, her daughter sold the home and used some of the proceeds to pay her attorney fees. The trial court agreed with the attorneys that they owed Petlig no compensation from their fees. We affirm the trial court's order, and each party

will bear its own costs.

## I.    BACKGROUND

As described more fully in her first appeal, in 2017, Gary Webb transferred ownership of his home to his daughter, Jessica Webb, via a quit claim deed. He intended that both his daughter and his daughter's mother, Petlig, would have the right to live in the home until their deaths. Gary Webb died in 2018.

In 2019, Jessica Webb evicted her mother from that home. Petlig sued, arguing that she was the beneficiary of a constructive trust granting her a life estate in the property. Jessica Webb's attorneys agreed to represent her "in exchange for payment of legal services rendered on an hourly basis" and secured payment by a deed of trust on the home. A lis pendens was put in place to protect Petlig's interest while the case was ongoing. The trial court ruled, however, that Petlig had no interest in the home. Petlig appealed that ruling.

While that appeal was pending, on March 14, 2023, Jessica Webb sold the home. Proceeds from the sale were distributed inter alia to Jessica Webb's attorneys and, indeed, to Petlig's own attorney as payment of legal fees. Jessica Webb received the remainder of the proceeds, other than closing costs, taxes, and other fees.

On August 14, 2023, this court reversed the trial court ruling that Petlig had no interest in the home, holding that she was the beneficiary of a constructive trust granting her a life estate in the home. Petlig v. Estate of Gary Webb, No. 84007-0-I, slip op. at 2 (Wash. Ct. App. Aug. 14, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/840070.pdf. Our Supreme Court denied

review on January 3, 2024.

On February 9, 2024, Petlig filed a "Motion to Allocate Constructive Trust Interest and Recoup Funds." She argued that the court should "enter a judgment against [Jessica] Webb with recoupment of trust funds from Farr Law Group and Carson Law Group as it is unlikely that [Jessica] Webb will pay a dime to her mother directly[.]" Petlig served the motion on Jessica Webb, Carson Law Group, and Farr Law Group. Jessica Webb did not respond to the motion.

The trial court denied Petlig's motion, ruling that under Ehsani v. McCullough Family P'ship, 160 Wn.2d 586, 159 P.3d 407 (2007), the proceeds from the sale of the home could not be "clawed back" from the attorneys. Petlig timely appeals.

## II.    ANALYSIS

Petlig argues that the attorneys wrongly "dipped into" or "took" the proceeds of the sale, which was constructive trust property, while the appeal was pending. From there, the two parties frame the issues differently. The attorneys claim the question is governed by RAP 12.8. Petlig replies that her right to recoup is not limited to RAP 12.8. Petlig argues that, under the common law, the attorneys must also show that they are bona fide purchasers, which she asserts they cannot. We agree with the attorneys' framing and apply RAP 12.8 and related rules of appellate procedure to the facts of this case.

When an unsuperseded judgment is reversed after the judgment has been executed, the judgment debtor's recourse is governed by RAP 12.8. State v. A.N.W. Seed Corp., 116 Wn.2d 39, 44, 802 P.2d 1353 (1991). "If a party has . . .

satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate to restore to the party any property taken from that party, the value of the property, or in appropriate circumstances, provide restitution." RAP 12.8. Where the property has been sold and, therefore, cannot be restored, restitution is the proper remedy when warranted. A.N.W. Seed Corp., 116 Wn.2d at 44.

We review a trial court's determination of restitution under RAP 12.8 for an abuse of discretion. Arzola v. Name Intelligence, Inc., 188 Wn. App. 588, 592, 355 P.3d 286 (2015). A court abuses its discretion when its actions are "exercised in a manifestly unreasonable manner or on untenable grounds." Id. An appellate court will not find an abuse of discretion simply because it would have come to a different conclusion. L.M. v. Hamilton, 193 Wn.2d 113, 134, 436 P.3d 803 (2019). However, a ruling based on an error of law constitutes an abuse of discretion. King v. Olympic Pipeline Co., 104 Wn. App. 338, 355, 16 P.3d 45 (2000).

The court did not abuse its discretion when it declined to grant Petlig restitution against the attorneys under RAP 12.8, based on its review of the actions of Petlig and the attorneys, which we address in turn.

As to Petlig's actions, "[a]ny person may take action premised on the validity of a trial court judgment or decision until enforcement of the judgment or decision is stayed as provided in rules 8.1 or 8.3." RAP 7.2(c). There is no dispute that Jessica Webb was acting on a valid court judgment when she sold the property. It was foreseeable that Jessica Webb would likely abscond with the sale proceeds. As stated in her briefing before the trial court, Petlig herself anticipated this

likelihood.

Further, any party "may obtain a stay of enforcement of a decision affecting rights to possession, ownership or use of real property, or of tangible personal property, or of intangible personal property, by filing in the trial court a supersedeas bond or cash, or by alternate security approved by the trial court." RAP 8.1(b)(2). There is no dispute that Petlig had a legal right under RAP 8.1 to stay the court judgment. Despite understanding that Jessica Webb was likely to abscond with the funds, Petlig did not move to stay the enforcement of the trial court judgment by posting a supersedeas bond pursuant to RAP 8.1.[1]

When Jessica Webb moved to cancel the lis pendens so she could sell the home, Petlig asked the court to deny Jessica Webb's motion. In her briefing, Petlig stated that she had "reasonably requested that $50,000 be set aside in exchange for release of the Lis Pendens." At oral argument before this court, Petlig insisted that this language was not intended as an offer or an agreement to release the lis pendens. Wash. Ct. of Appeals oral argument, Petlig v. Estate of Gary Webb, No. 87335-1-I (Oct. 31, 2025), at 5 min., 2 sec. through 6 min., 35 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025101185/?eventID=2025101185. Her counsel argued that

---

[1] We recognize that posting a supersedeas bond may not have been a practical option for Petlig due to her financial constraints. The attorneys argue that the property itself could have served as a security for Petlig's interest. Wash. Ct. of Appeals oral argument, Petlig v. Estate of Gary Webb, No. 87335-1-I (Oct. 31, 2025), at 12 min., 33 sec. through 13 min., 50 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025101185/?eventID=2025101185. The record before this court is not sufficient to determine whether this suggestion was practicable.

this was a description of her communication with escrow regarding their demand for payment. Wash. Ct. of Appeals oral argument, <u>supra</u> at 20 min., 43 sec. through 21 min., 18 sec.

Regardless of Petlig's intention, the trial court reasonably relied on the language in her briefing when it ruled that the lis pendens shall be released upon the "deposit of $50,000 from the sale proceeds of the home" into the court registry. Even if the court misunderstood Petlig's response as an agreement, Petlig did not appeal the trial court's ruling within 30 days as required by RAP 5.2(a).

The trial court noted the above facts in performing its analysis. Petlig took none of the options available to her to protect fully the possible value of the life estate; namely, to post a supersedeas bond to stay the judgment pursuant to RAP 8.1, to request funds in excess of $50,000 be placed in the court registry, or to appeal the release of the lis pendens. Thus, the court did not abuse its discretion when it found that it was not a "surprise" that the proceeds of the sale would be disbursed and that Petlig did not take any of the many actions she could have taken to "protect" her interest.

As to the attorneys' actions, "[r]estitution under RAP 12.8 is an equitable remedy and 'trial courts have broad discretionary power to fashion equitable remedies.'" <u>Ehsani</u>, 160 Wn.2d at 589 (quoting <u>In re Foreclosure of Liens</u>, 123 Wn.2d 197, 204, 867 P.2d 605 (1994)). Restitution is not a matter of right. <u>Atl. Coast Line R. Co. v. Florida</u>, 295 U.S. 301, 310, 55 S. Ct. 7131 (1935). At its broadest, the trial court has discretion to provide restitution "in appropriate circumstances." RAP 12.8.

"The purpose of restitution is to remedy unjust enrichment." Ehsani, 160 Wn.2d at 594. "The question no longer is whether the law would put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it." Atl. Coast Line R. Co., 295 U.S. at 310. The claimant bears the burden to show "that the money was received in such circumstances that the possessor will *give offense to equity and good conscience* if permitted to retain it." Id. at 309 (emphasis added). There is no unjust enrichment if a party receives only a benefit to which he is entitled under a valid agreement with the judgment creditor. Ehsani, 160 Wn.2d at 595.

The attorneys were not unjustly enriched. Id. at 594-95. There is no dispute that they performed legal services on behalf of Jessica Webb and that she owed them payment for their services. The fact that Jessica Webb has absconded with funds that Petlig has a claim to did not mean that the attorneys are no longer entitled to payment. Id. at 595.

It was, therefore, within the trial court's "broad discretionary power" to find that restitution was not equitable, considering both the actions Petlig took (and did not take) to defend her interests and the attorneys' actions in collecting the debt Jessica Webb indisputably owed them. Id. at 589, 594-95. Perhaps most crucially, Petlig does not show, as is her burden, that the attorneys' actions "give offense to equity and good conscience." Atl. Coast Line R. Co., 295 U.S. at 309.

Petlig attempts to distinguish the facts of this case from the facts in Ehsani, which held that "[a]n attorney who receives a monetary judgment on behalf of his

7

clients and, upon request, disburses those funds to his clients' creditors, including himself, is not liable in restitution to the judgment debtor when said judgment is subsequently reversed on appeal." Ehsani, 160 Wn.2d at 594. In Ehsani, the funds came from a monetary judgment that the judgment debtor paid pursuant to the trial court order. 160 Wn.2d at 589. At the client's direction, the attorney then disbursed the funds from their client trust account to themselves and to pay the client's other debts. Id. In contrast, here, the funds came directly from the sale of the house, which the attorneys disbursed without any evidence of Jessica Webb's involvement or a court order approving payment to the attorneys.

These are distinctions without a difference. The debt here was valid and the attorneys acted under a court order which had not been stayed. Petlig offers no authority for the proposition that such debts must be discharged in a certain way, through a certain vehicle, or through a specific kind of authorization or second court order. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Stated otherwise, Petlig's argument—that what protected the attorney from restitution in Ehsani was the client trust account or the fact that it was a monetary judgment—is an argument that elevates form over substance. The factual or procedural differences in the present matter do not change the guiding legal principle that restitution from the attorneys would only be appropriate if they were unjustly enriched, for which there is no evidentiary support on this record. Ehsani,

160 Wn.2d at 597.

In reply, Petlig first likens this case to <u>Mohamed v. Kerr</u>, 91 F.3d 1124, 1127 (8th Cir. 1996), which held that an attorney paid via contingency fee may be unjustly enriched by a judgment that is subsequently reversed. That court held that, because the contingency fee hinges on the suit's success, the trial court's error in their favor bestows a benefit on them that they otherwise had no claim to. However, the attorneys in this case agreed to bill on an hourly basis, not a contingency fee. Again, Petlig does not claim that the attorneys wrongly charged their client in any other way. Therefore, this argument fails and the attorneys were not unjustly enriched as in <u>Mohamed</u>.

Petlig next argues that the attorneys became constructive trustees when they took the sale proceeds from her fiduciary, i.e., Jessica Webb, such that Petlig is the beneficiary. It may be true that "where a fiduciary has misappropriated property belonging to his beneficiary and transfers it to a third person, the latter, unless a bona fide purchaser for value, holds the property as constructive trustee for the beneficiary." <u>Viewcrest Coop. Ass'n, Inc. v. Deer</u>, 70 Wn.2d 290, 292, 422 P.2d 832 (1967). It may also be true that, "'whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence . . . a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser of it in good faith.'" <u>In re Marriage of Lutz</u>, 74 Wn. App. 356, 369, 873 P.2d 566 (1994) (quoting <u>Kausky v. Kosten</u>, 27 Wn.2d 721, 732, 179 P.2d 950 (1947)). Based on these principles, Petlig leaps to

9

the conclusion that the only way the attorneys could not be constructive trustees is if they were bona fide purchasers, which she claims they are not. This is a deficient analogy, if not just an error of logic.

Being a bona fide purchaser is *one* reason that a third party would not become a constructive trustee, but that is not the only possible reason. To reach the question of whether the attorneys were bona fide purchasers, Petlig must first show that the fiduciary, Jessica Webb, "misappropriated" funds in the first place. Viewcrest Coop. Ass'n, Inc., 70 Wn.2d at 292. But, again, Jessica Webb sold the property pursuant to a then-operative court order, as is permitted under RAP 7.2(c). The predicate fact does not exist in this case.

The cases Petlig relies on, which involved clear unconscionable breaches of fiduciary duty, prove the point. In Viewcrest, the fiduciary had engaged in "inequitable or unconscionable conduct" by using the funds to pay off a debt that had no relation to the beneficiary. 70 Wn.2d at 294. In Lutz, a husband breached a fiduciary duty to his wife by transferring title to prevent the property from being characterized as community property, showing a "clear element of unconscionability." 74 Wn. App. at 369.

In selling the home, Jessica Webb and the attorneys were not, at the time in question, acting unconscionably vis-à-vis Petlig, so the cited cases do not apply and the attorneys did not become constructive trustees by that fact alone.[2]

_____

[2] Petlig also argues that since the release of the lis pendens was never recorded, under Guardado v. Taylor, the attorneys are not protected by RAP 12.8. 17 Wn. App. 2d 676, 692, 490 P.3d 274 (2021). This issue is immaterial, since the validity of the sale does not impact the fact that the attorneys were not unjustly enriched and do not owe restitution. Also, Guardado can be distinguished since the lis

Thus, this assignment of error fails.[3]

Finally, both parties seek attorney fees on appeal. We decline to award attorney fees to either party.

Petlig cites to RCW 7.52.480, which states that "[t]he cost of partition, including fees of referees and other disbursements including reasonable attorney fees to be fixed by the court and in case the land is ordered sold, costs of an abstract of title, shall be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interests therein, and may be included and specified in the decree." But Petlig does not apply the statute to the facts of this case. See Blueberry Place Homeowner's Ass'n v. Northward Homes, Inc., 126 Wn. App. 352, 363 n.12, 110 P.3d 1145 (2005) ("The party requesting fees on appeal is required by RAP 18.1(b) to *argue the issue* and provide citation to authority in order to advise the court as to the appropriate grounds for an award of attorneys' fees and costs.") (emphasis added). This alone is reason to deny fees.

Petlig also cites to Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 926, 982 P.2d 131 (1999), which describes two equitable bases for attorney fees (bad faith and ABC theory). But she again does not specify which

---

pendens meant that the buyers there were not good faith purchasers, but the attorneys in this case were not purchasers of any kind and, therefore, need not show that they were good faith purchasers. Id. at 695.

[3] Because we hold that Petlig has no claim to the funds disbursed to the attorneys, we do not address the issue of whether the trial court erred in declining to value Petlig's life estate. In addition, because we affirm the trial court's judgment on the merits, we decline to address the attorneys' arguments that Petlig's claims have been waived or are not justiciable.

basis applies in her case nor does she argue why attorney fees are appropriate on that basis.[4] See Blueberry Place Homeowner's Ass'n, 126 Wn. App. at 363 n.12. We therefore find no basis to grant Petlig's request for attorneys fees.

At least one of the attorneys also seeks fees on appeal, arguing Petlig's appeal is frivolous. RAP 18.9 permits an appellate court to award a party attorney fees as sanctions when the opposing party files a frivolous appellate action. Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004). "All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant" and "[a]n appeal that is affirmed simply because the arguments are rejected is not frivolous." In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013) (citing Tiffany Familiy Trust Corp. v. City of Kent 155 Wn. 2d 255, 241, 119 P.3d 325 (2005)). An appeal is only frivolous if there is no debatable issue on which reasonable minds might differ and the appeal is so devoid of merit that there is no possibility of reversal. Id.

Although we reject Petlig's arguments, we do not view her appeal as so devoid of debatable issues as to be frivolous. Petlig's argument that the attorneys are not protected by RAP 12.8 is not so devoid of merit that the appeal stood no possibility of success. Resolving all doubts in her favor, the unusual facts and posture here provided reasonable grounds for appeal. The request for fees is denied.

---

[4] Petlig also argues for the first time in reply that equity demands we grant her attorney fees. We generally do not address arguments raised for the first time in reply and decline to do so here. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

### III.    CONCLUSION

We affirm the trial court's order.


WE CONCUR:                                   _Díaz, J._


_Coburn, J._       _Smith, J._